## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 14 2016, 9:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Brian J. Johnson
Danville, Indiana

Todd L. Sallee
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dakota Fraley,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 14, 2016

Court of Appeals Case No.
15A05-1601-CR-36

Appeal from the Dearborn
Superior Court

The Honorable Sally A.
McLaughlin, Judge

Trial Court Cause No.
15D02-1406-FB-32

**Najam, Judge.**

## Statement of the Case

Dakota Fraley appeals his sentence for five counts of burglary, as Class B felonies, following a negotiated plea agreement. He raises two[1] issues for our review, which we restate as follows:

1.  Whether the trial court abused its discretion when it failed to consider Fraley's proposed mitigating evidence or to properly recognize Fraley's criminal history as an aggravating circumstance.

2.  Whether Fraley's sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

## Facts and Procedural History

Fraley was born on November 16, 1993, and lived most of his life in Ripley County with his mother. He began smoking marijuana at age twelve, drinking alcohol at age thirteen, and experimenting with all other illegal narcotics except for "LSD" and "mushrooms." Appellant's App. at 44. Fraley began to smoke marijuana daily when he was thirteen, and he began to sell marijuana and prescription pain pills when he was fifteen. During that time he also began to snort pain pills such as OxyContin and Percocet. Fraley began to spend close to $150 to $200 per day on pills, and he snorted two to four pills per day.

---

[1] Fraley frames the issue as solely an Indiana Appellate Rule 7(B) issue, but he actually argues both a Rule 7(B) issue and an abuse of discretion issue.

Fraley began to inject heroin at age seventeen and immediately became addicted to it.

[4] Fraley's first encounter with the criminal justice system occurred in August of 2011 when he was charged as a delinquent for theft. Approximately two weeks after the theft charge, Fraley's mother first became aware of his heroin addiction when she found his syringes. At that point, Fraley's mother placed him in Valle Vista where he completed a twenty-one-day substance abuse treatment program.

[5] On October 21, 2011, a court adjudicated Fraley a delinquent for theft and sentenced him to "120 days confinement to DOC[,] suspended; one (1) year probation; restitution; substance abuse counseling; [and] community service." Appellant's App. at 38. On November 9, the State again charged Fraley in juvenile court, this time for possession of a narcotic drug, two counts of maintaining a common nuisance, dealing in marijuana, possession of marijuana, and possession of paraphernalia. These charges were waived to adult court, and the court convicted Fraley of possession of a narcotic drug. On March 22, 2012, the court sentenced Fraley to "three (3) years confinement[,] with two years and 169 days suspended to reporting [sic] probation." *Id*. at 39.

[6] On May 31, 2012, Fraley violated probation by testing positive for opiates, and the court revoked 270 days of probation. On September 17, the court again revoked Fraley's probation, and terminated it, because he had committed two new criminal offenses: possession of a drug abuse instrument and unlawful

possession of a syringe. Fraley was convicted of the latter offense as a Class D felony, and the court imposed 366 days of incarceration as a sanction, with zero days suspended. While Fraley was incarcerated and awaiting sentencing, he voluntarily entered and completed a ninety day jail chemical addiction program ("JCAP").

[7] On June 25, 2013, after Fraley's release from jail and while he was on parole, the police arrested him for two counts of burglary. He was released on bond and was subject to bond conditions when, between March and May 2014, he committed ten residential burglaries. Fraley had relapsed into heroin addiction and began to commit the burglaries to support a $400 to $600 per day drug habit. Once at a residence, Fraley would knock on the door and, if nobody answered, he would force entry into the residence and steal cash, jewelry, televisions, and firearms; if someone did answer the door, Fraley would pretend he was lost and needed directions. Fraley pawned the jewelry at pawn shops in Hamilton County, Ohio, and traded the televisions and firearms for heroin to drug dealers in Cincinnati, Ohio.

[8] Fraley committed all ten residential burglaries in Dearborn County, Indiana, during the day while the homeowners were gone. The police came to suspect Fraley in the burglaries and, as a result, the police were surveilling him on May 21 when they observed him burglarize a home. They then followed him in unmarked cars as he drove away from the home in a pickup truck. When Fraley pulled into a driveway, Indiana State Police Detective Wuestefeld exited his vehicle and approached Fraley's truck while he displayed his badge and gun

with outstretched arms and yelled that he was a State Police officer. Before Detective Wuestefeld reached the truck, Fraley resumed driving and quickly drove off into a nearby field. Ripley County Sheriff's Department Detective Hildebrand drove up to the scene and attempted to block Fraley's route of escape, but Fraley swerved around Detective Hildebrand. Fraley quickly drove off at speeds of sixty to seventy miles per hour and drove on and off the road into fields while the police chased him. After he had traveled about one mile, Fraley drove his truck into a dirt mound in a field and stopped there.

[9]     At that point, Detective Hildebrand exited his vehicle, approached Fraley, and ordered him to exit the truck. When Detective Hildebrand reached Fraley's window, Fraley turned the truck sharply and accelerated, hitting Detective Hildebrand and knocking him to the ground. Detective Wuestefeld, who was also now in the field, fired six shots into the truck's windshield, but none of the shots hit Fraley. Fraley again sped away from the officers and threw stolen items out of his truck as he fled. The ensuing chase reached speeds up to 120 miles per hour and created such danger that the local school had to lock down. As the police officers attempted to maintain contact with Fraley's truck, he sped through intersections without slowing and the officers lost sight of the truck. Fraley abandoned the truck about five to six miles into Franklin County where officers found it unoccupied. With the assistance of a canine unit, the officers located and apprehended Fraley approximately thirty minutes later.

[10]    The State charged Fraley with nine counts of residential burglary, as Class B felonies, and five counts of conspiracy to commit burglary, as Class B felonies.

In another cause number, the State charged Fraley with the last burglary the police had observed before apprehending him. Fraley entered into a negotiated plea agreement under which he had agreed to plead guilty to five of the burglary charges in exchange for having the remaining counts, including the sixth burglary charge, dismissed. Fraley also agreed to admit to a factual basis for all of the charged crimes although he was only pleading guilty to five of them. He pleaded guilty in accordance with the plea agreement, and, following a sentencing hearing, the court sentenced him to an aggregate of sixty-eight years imprisonment, with five years suspended to probation. The trial court also ordered that Fraley pay restitution to the various victims in the amount of $42,556.98.

[11] The trial court articulated its rationale for Fraley's sentence in a written "Findings of Aggravating and Mitigating Circumstances and Court Rationale for Sentence," which stated in relevant part as follows:

> This [is a] case where at least ten (10) homes were burglarized[,] causing families' lives to be interrupted without warning; where a school was placed on lock down while the Defendant fled recklessly from police; and where the Defendant now realizes that he is ready for treatment when facing the consequences of his chosen actions is a stark reality of the changed world this community faces and the harsh realities of substance abuse.
>
> The Court finds and takes into consideration the mitigating factors that the Defendant was twenty (20) years of age at the time these offenses were committed. The Court also notes as mitigating factors his plea of guilty and stated remorse for his actions.

The Court finds that the Defendant's history of substance abuse is not a mitigating factor. The Defendant was not a juvenile at the time these offenses were committed and[,] although the Court would agree that[,] as cited in Defendant's memorandum[,] . . . where children and adolescents are the victims of addiction, this fact does not necessarily indicate bad character[,] *Brown v. State*, 10 N.E.3d 1[, 6] (Ind. 2014)[,] that . . . premise doesn't give rise to a finding of mitigation in this fact situation. The Court notes that the Court of Appeals noted that "extensive and prolonged history of alcohol and drug use despite prior treatment does not reflect positively on [one's] character[,]" *Mefford v. State*, 983 N.E.2d 232[, 237-38] (Ind. Ct. App. 2013)[, *trans. denied*,] and[,] although in *Mefford* the Defendant was forty-one (41) years old, the Defendant in this matter had two (2) separate interventions for treatment . . . neither [of which], in his own words, did he take seriously[,] and thus the Court is not giving any significant weight [to his drug use] as a mitigating factor.

The Defendant further asks that the Court recognize as a mitigating circumstance that Defendant will make restitution to the victims. The Court notes that although Defendant is reported to be intelligent and a high school graduate, his work record and habits are such that the longest time he held a job was for two and a half (2 ½) months. He has[,] to date, made no restitution. The Court does not find this to be a valid mitigator under these circumstances.

The Court finds there are significant aggravating factors which outweigh the mitigating factors that the Court has considered in sentencing. These include that[,] when committing the burglaries in Dearborn County, the Defendant had pending burglar[y charges] in Ripley County and was on pre-trial release under conditions of bond. The Defendant had a prior juvenile and adult criminal history at the time the burglaries in this matter were committed. The Defendant committed two (2) separate

probation violations while on probation in Dearborn Circuit Court [for] Possession of a Narcotic Drug, a Class D Felony, indicating that Defendant is unlikely to follow probation conditions and has a propensity to not follow Court orders. The Defendant also has a conviction for Unlawful Possession of a Syringe. The Court gives significant weight to these factors in determining sentencing.

Further the Court finds that the Defendant has a supportive family who have intervened in the past to provide intensive in-patient substance abuse treatment and the Defendant's sentence in Juvenile Court included substance abuse evaluation and treatment and he completed an intensive Jail Chemical Addiction Program. Despite these resources and family support, the Defendant chose to continue criminal conduct affecting at least ten (10) families in this community. The Court considers this in determining that the Defendant's character is such that long term incarceration is appropriate.

The Court finds the character of the Defendant such that it is likely the Defendant has the propensity to commit future crimes. The Court bases this on prior criminal history as well as the actions of the Defendant in the course of committing the burglaries. These include acts which exceed the elements of the crimes charged. At the Stenger home, the Defendant kicked the family room door with such force it flew off its hinges going down the steps; at the Mendle/Lindsay home, the Defendant kicked in the rear door and left the front door wide open; the Defendant stole items of obvious sentimental value[, including] an antique rosary, watches which were engraved from places of work[,] sports memorabilia[,] and other items. The reckless disregard of community safety demonstrated by the Defendant as he sped away from the police through dangerous intersections on county roads and even into yards of residences where people were present demonstrate poor character and the Court gives this factor weight in finding an aggravated sentence.

The Court finds the victim in Count IV is ninety-one (91) years old and would have been approximately eighty-nine (89) years old when the crime was committed and finds it is an aggravated factor pursuant to I.C. 35-38-1-7.1.

The Court notes the impact on each of the victims continue[s] to this date. All have possessions of sentimental value that can never be replaced and all have had out of pocket expenses that have not been paid. The Court finds their impact is one anyone experiencing a burglary would generally have. However, the Court notes there are circumstances that exceed the impact one might expect. Mr. Hornbach was out of State at a wedding that he was then unable to attend and the concern for his elderly mother who discovered the burglary and the fact that she and his elderly father had to attempt to board up the door while awaiting his return was an excessive impact. In addition, Ms. Stenger's experience of hiding under her desk at her job at Sunman Elementary while the school was in lock down due to the chase of the Defendant who burglarized her home[,] throwing out her sentimental possessions on fifteen (15) miles of roadway[,] had an impact beyond what one would expect from a home burglary. The Court does consider these in sentencing.

Appellant's App. pp. 136-139.

[12]     This appeal ensued.

# Discussion and Decision

## *Issue One:  Abuse of Discretion in Sentencing*

### *Standard of Review*

[13]     Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the

decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any[2]—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id*. (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion, *id*., and a trial court is under no obligation to explain why a proposed mitigator does not exist or why the court gave it insignificant weight, *Sandleben v. State*, 22 N.E.3d 782, 796 (Ind. Ct. App. 2014), *trans. denied*.

---

[2] We note that, under the advisory sentencing scheme that replaced the presumptive sentencing scheme in 2005, the trial court "no longer has an obligation to weigh aggravating and mitigating factors against each other when imposing a sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). However, neither is the trial court prohibited from identifying facts in aggravation or mitigation. *Id*. And, if the trial court does find the existence of such factors, "then the trial court is required to give 'a statement of the court's reasons for selecting the sentence that it imposes.'" *Id*. (quoting Ind. Code § 35-38-1-3 (2006)).

[14] Fraley first contends that the trial court abused its discretion by failing to find that his history of substance abuse was a mitigating factor. It is true that a juvenile offender's difficult upbringing, which can include early drug and alcohol use, can serve to diminish the juvenile's culpability and weigh in favor of a lesser sentence. *See Brown*, 10 N.E.3d at 6 (citing *Graham v. Florida*, 560 U.S. 48, 92 (2010) (Roberts, C.J., concurring in the judgment)). However, as the trial court pointed out, Fraley was not a juvenile when he committed the burglaries at issue in this appeal. Rather, he was a twenty-year-old adult with a lengthy history of drug and alcohol abuse who showed no improvement despite being given opportunities for rehabilitation.[3] In such situations, the history of drug or alcohol abuse may be an aggravator, rather than a mitigator. *Caraway v. State*, 959 N.E.2d 847, 852 (Ind. Ct. App. 2011), *trans. denied*.

[15] Here, the trial court did not find that Fraley's history of substance abuse was a mitigator, as Fraley had argued, but neither did it cite his substance abuse as an aggravator, as it could have done. *See, e.g.*, *Bryant v. State*, 802 N.E.2d 486, 501 (Ind. Ct. App. 2004) (finding that eighteen-year-old defendant's history of substance abuse was properly considered an aggravating, rather than mitigating,

---

[3] In Fraley's brief he cites, for the first time, medical journals about drug addiction and high rates of relapse, especially related to heroin. Appellant's Br. at 30-32. There is nothing in the record to indicate that Fraley ever presented this information to the trial court. Therefore, the cited medical journals are evidence "outside the record" and cannot be considered on appeal. *Marion Cty. Office of Family and Children v. Qualls (In re D.Q.)*, 745 N.E.2d 904, 906 n.1 (Ind. Ct. App. 2001).

circumstance where the defendant had taken no positive steps to treat his addiction), *trans. denied*. We conclude that the trial court did not abuse its discretion in declining to find Fraley's history of substance abuse to be a mitigating factor.

*Criminal History as an Aggravating Factor*

[16] Fraley also maintains that the trial court abused its discretion when it found that his criminal history was an aggravating circumstance. A history of criminal or delinquent behavior may properly be considered as an aggravating circumstance, Ind. Code § 35-38-1-7.1(a)(2) (2014), and it is clear from the record that Fraley had both a juvenile delinquency and adult criminal history that supported the trial court's finding. However, "[t]he significance of a defendant's criminal history varies based on the gravity, nature, and number of prior offenses as they relate to the current offense." *Field v. State*, 843 N.E.2d 1008, 1011 (Ind. Ct. App. 2006) (citing *Wooley v. State*, 716 N.E.2d 919, 929 n.4 (Ind. 1999)), *trans. denied*. Here, at the time Fraley was convicted, he was twenty years old and had already accumulated one juvenile adjudication and two adult felony convictions for drug offenses. He had also had his probation revoked twice and was subject to conditions of bond and on pre-trial release for pending burglary charges in Ripley County when he committed the burglaries in Dearborn County. Moreover, Fraley admitted that his drug addiction is what drove his crimes of burglary. Thus, his criminal history was recent, substantial, and at least partially related to the offenses of which he was convicted in the instant case. We have held in other cases involving similar

criminal histories that it was proper for a trial court to give substantial weight to the criminal histories as aggravators. *See, e.g.*, *id.*; *cf. Westmoreland v. State*, 787 N.E.2d 1005, 1010 (Ind. Ct. App. 2003) (finding that a criminal history comprised of misdemeanors unrelated to the charged offense is not a significant aggravator). The trial court did not abuse its discretion in finding Fraley's criminal history to be an aggravating factor.[4]

### *Issue Two: Inappropriateness of Sentence*

[17] Fraley also contends that his sentence is inappropriate in light of the nature of the offenses and his character. Article 7, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her

---

[4] To the extent Fraley argues that the trial court erred in giving significant *weight* to the aggravating factor of his criminal history, he does not state a reviewable claim. *See, e.g.*, *Gross*, 22 N.E.3d at 869.

sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original).

[18] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[19] Fraley's offenses were a series of home burglaries in which he forcibly broke into homes and stole property, including jewelry, televisions, firearms, and items of sentimental value. He then pawned the stolen jewelry in order to buy drugs. He also traded the stolen televisions and firearms to drug dealers in exchange for drugs. When police attempted to apprehend him, he led them on a reckless, dangerous, high-speed chase, causing a local school to lock down.

In the course of fleeing, he hit a police officer with his truck. All of these facts show that the nature of Fraley's offenses were serious, severe, and dangerous.

[20] Moreover, Fraley's actions in committing these crimes show a poor character. By providing firearms to drug dealers and recklessly driving through his community at high speeds as he fled from police, Fraley showed no concern whatsoever for the safety of others. As already noted, he knocked a police officer down with his truck as he attempted to flee. All of this, in addition to Fraley's criminal history and long history of drug abuse despite treatment, reflects poorly on his character, *Mefford*, 983 N.E.2d at 237-38, and supports the trial court's conclusion that Fraley's "character is such that long term incarceration is appropriate," Appellant's App. at 138.

[21] Fraley asserts that his sentence is inappropriate given that those who commit violent crimes could receive shorter periods of incarceration than he did for his nonviolent crimes. First, we note that the trial court did not give Fraley the maximum sentence for all five burglaries of which he was convicted; had it done so, his sentence would have been 100 years. I.C. § 35-50-2-5(a). Second, in his comparisons of the sentences for violent crimes like murder, Fraley only quotes the sentencing ranges for a single commission of those crimes, and he glosses over the fact that his sixty-eight year sentence is not for a single crime but for a string of five separate burglaries and, thus, against multiple victims. Third, and most importantly, our Rule 7(B) analysis does not focus on comparisons to the sentences for other types of crimes. *See, e.g.*, *Anglin v. State*, 787 N.E.2d 1012, 1019 (Ind. Ct. App. 2003), *trans. denied*. Rather, we focus less

upon comparing the facts of a case to others, whether real or hypothetical, and more upon the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about his character. *Id.*; *see also Brown v. State*, 760 N.E.2d 243, 248 (Ind. Ct. App. 2002) ("Although one can imagine facts that might be worse than those before us here, such does not lessen the severity of [defendant's] conduct or bolster the quality of his character by comparison."), *trans. denied*.

[22] Fraley's sentence is not inappropriate given the nature of the offenses and his character.

[23] Affirmed.

Vaidik, C.J., and Baker, J., concur.