# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**DONALD R. SHULER**
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**WILLIAM HACKL BRAINARD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RICHARD C. GROSS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 20A05-1406-CR-293 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1309-MR-6

**December 22, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Richard C. Gross appeals his convictions and sentence for two counts of murder. Gross raises three issues, which we revise and restate as:

I.  Whether the trial court abused its discretion in denying his motion to withdraw his guilty pleas;

II.  Whether the court abused its discretion in sentencing him; and

III.  Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 5, 2013, Gross and Kevin Moore went to Saleh's Market in Elkhart County, Indiana, to commit a robbery. Gross gave his black shoes to Moore because they appeared less distinctive or identifiable than Moore's red shoes, and Gross knew that Moore was going to rob the store using a gun. Moore entered the store and shot Jagtar Singh Bhatti and Pawan Singh, who both died as a result of their injuries. Moore then joined Gross, and they hid the gun and left the area.

On September 17, 2013, the State charged Gross with two counts of murder for the deaths of Bhatti and Singh. On December 9, 2013, the day the jury trial was scheduled to begin, Gross by counsel indicated that he desired to plead guilty to two counts of murder.[1] Gross indicated that he signed a plea agreement and reviewed it with his counsel. Gross testified to the facts above and admitted that he and Moore, acting together, knowingly killed Bhatti and Singh while attempting to commit robbery by

---

[1] The court noted that "there was an attempt to plead guilty on Friday. I was not here, but another judge was here and that did not get resolved." Transcript at 12-13. The record does not contain a transcript of this prior hearing.

2

taking property from them by the use of force. Gross indicated that he was satisfied with the advice of his counsel. When asked if he had ever been treated for mental illness, Gross responded affirmatively and stated "Bipolar, ADHD," "Schizophrenia," and "I got depression." Transcript at 22. The court asked if any of his conditions would in any way affect his ability to understand the proceedings, and Gross answered "No, sir." Id. at 23. Gross indicated he was not under the influence of alcohol or any drugs that would affect his ability to understand the proceedings. The court advised Gross of his right to a public and speedy trial and to face and cross-examine all witnesses against him and that he was giving up these rights by pleading guilty, and Gross indicated he understood. Gross also indicated he understood he was giving up the right to appeal his conviction but was reserving the right to appeal his sentence.

The trial court further advised Gross of the possible sentence for murder. The court asked if Gross understood that the maximum possible sentence "for each count is 65 years," and Gross responded affirmatively. Id. at 31. The court asked if Gross understood that "they can be served consecutively or concurrently," and Gross replied: "Yes, sir." Id. When the court asked "[d]o you understand that [the court] shall determine whether terms of prison shall be served consecutively or concurrently," Gross answered: "Yes, sir." Id. at 32. When asked if he understood that, "[i]n considering such aggravating circumstances, the Court could impose consecutive terms of imprisonment for multiple offenses," Gross answered affirmatively. Id. Gross indicated that he was on probation for disorderly conduct out of the city court. The court asked Gross's counsel if there were any situations that would give rise to consecutive or nonsuspendible

3

sentences, and Gross's counsel stated in part that "we have told him that he is potentially looking at consecutive sentences . . . ." Id. at 34. The court asked Gross if he understood his sentence could be "anywhere from 45 up to 130" years, and Gross replied "[y]es, sir." Id. The court noted that it made no promises as to sentencing and asked Gross whether he understood that it was possible that his sentences "could be consecutive . . . but it's mandatory they be consecutive with the city court case if you're on probation when this offense occurred," and Gross answered "[y]es, sir." Id. at 35. The court asked if Gross understood "the conversation we had about consecutive and nonsuspendible," and Gross replied affirmatively. Id. at 35-36. Gross further indicated that he was not forced or threatened to plead guilty to the charges, that his plea of guilty was his own free and voluntary act, and that he was satisfied with his attorneys. Gross's counsel asked Gross, "[a]nd you want to use your pleading today as a mitigator, and we talked about what a mitigator means," and Gross stated "[y]es, sir," and Gross's counsel stated he "would like to have it clear for the record [that] the judge talked about the possible range of being 45 up to 130 years. Remember that," and Gross stated "[y]es, sir." Id. at 39. The court asked Gross if he wanted the court to accept his guilty pleas, cancel the jury trial, order a presentence report, and schedule the sentencing hearing, and Gross replied affirmatively. The court accepted Gross's pleas of guilty.

On December 19, 2013, Gross, *pro se*, filed a motion to withdraw guilty plea in which he stated in part that, because of his mental health issues, it is difficult to understand or comprehend written documents, that he did not have adequate assistance understanding his charges, that he did not have the ability to research his case, that "he

4

was misled by his attorney, and told that these charges, for sentencing purposes, would be served concurrently if he plead [sic] guilty," and that he did not learn of the total amount of time he could receive until he spoke with an inmate. Appellant's Appendix at 27. On March 13, 2014, the court held a hearing at which it addressed Gross's motion to withdraw guilty plea. The court reviewed the December 9, 2013 proceedings and, after hearing argument by Gross and the State, denied Gross's motion.

On May 29, 2014, the court held a sentencing hearing. The prosecutor argued that the autopsy noted that "it was a contact wound to the back of Pawan Singh's head" and "[t]hat is an execution." Transcript at 100-101. The prosecutor asked the court to hold Gross accountable to an extent "that recognizes that separate and distinct criminal acts deserved a separately experienced punishment." Id. at 101. Gross testified that he was remorseful, that he "loved those people at that store," that he thinks about the victims every night, and that he has "nothing but love for them." Id. at 105-106. Gross testified that Singh treated him like a brother and that he "never wanted this at all to happen." Id. at 108. Gross asked the court to take into consideration that he did not pull the trigger. In its sentencing order, the trial court found the following mitigating circumstances: Gross's age of twenty-three years; Gross accepted responsibility for his criminal conduct; Gross's bipolar and schizophrenic condition; and the fact that Gross was not the person who ultimately pulled the trigger causing the death although he did aid and assist in a substantial fashion. The court found the following aggravating circumstances: the fact there were multiple victims in this case and multiple counts and each of the victims was shot at point-blank range; Gross's first use of marijuana was at age eighteen and he had

5

been using marijuana for approximately five years; Gross committed the instant offense while under the influence of synthetic marijuana and alcohol; his criminal history consists of "three misdemeanors and one felony type offense" and "the felony type offense was originally charged as a robbery but was reduced to a lesser offense"; the offense here "was a robbery type offense" and Gross learned nothing from his prior actions; other sanctions were attempted and unsuccessful in causing his rehabilitation, including probation and suspended sentences; there has been an escalation of violence in his criminal offenses; and that Gross could have "called it off at any time but failed to do so" which was "particularly egregious in light of [Gross] stating to the Court that he was friends with the victims." Appellant's Appendix at 67-68. The court imposed a "mitigated sentence of fifty (50) years" with respect to each of Gross's two convictions for murder and stated that it chose "a mitigated sentence in light of [Gross's] mental health condition and history." Id. at 68-69. The court also ordered that Gross serve his sentences consecutive to each other, and stated that it "weighed the aggravating factors previously identified by the Court against the mitigating factors and notes that any one of the aggravators when compared against the mitigators would warrant the imposition of consecutive sentencing . . . ." Id. at 70. Thus, the court imposed an aggregate sentence of one hundred years and recommended that Gross receive addictions treatment and mental health treatment while incarcerated.

6

DISCUSSION

I.

The first issue is whether the trial court erred in denying Gross's motion to withdraw his guilty plea. Ind. Code § 35-35-1-4(b) governs motions to withdraw guilty pleas filed after a defendant has pled guilty but before the trial court has imposed a sentence. The trial court must allow a defendant to withdraw a guilty plea if "necessary to correct a manifest injustice." Brightman v. State, 758 N.E.2d 41, 44 (Ind. 2001) (quoting Ind. Code § 35-35-1-4(b)). By contrast, the trial court must deny the motion if withdrawal of the plea would "substantially prejudice" the State. Id. (quoting Ind. Code § 35-35-1-4(b)). In all other cases, the trial court may grant the defendant's motion to withdraw a guilty plea "for any fair and just reason." Id. (quoting Ind. Code § 35-35-1-4(b)). A defendant has the burden to prove by a preponderance of the evidence and with specific facts that he should be permitted to withdraw his plea. Ind. Code § 35-35-1-4(e); Smith v. State, 596 N.E.2d 257, 259 (Ind. Ct. App. 1992).

"Manifest injustice" and "substantial prejudice" are necessarily imprecise standards, and an appellant seeking to overturn a trial court's decision faces a high hurdle. Coomer v. State, 652 N.E.2d 60, 62 (Ind. 1995). "The trial court's ruling on a motion to withdraw a guilty plea arrives in this Court with a presumption in favor of the ruling." Id. We will reverse the trial court only for an abuse of discretion. Id. In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea, we examine the statements made by the defendant at his guilty plea hearing to decide whether his plea was offered "freely and knowingly." Id. See also

7

Davis v. State, 770 N.E.2d 319, 326 (Ind. 2002) (holding that a trial court's decision on a request to withdraw a guilty plea is presumptively valid, and a party appealing an adverse decision must prove that the court has abused its discretion), reh'g denied.

Gross asserts that the trial court abused its discretion in denying his motion to withdraw guilty plea. He argues that he "is cognizant of the fact that during his plea hearing, he provided that he understood his rights and that the plea was his free and voluntary act" but that he "contends that a review of the record demonstrates a fundamental lack of understanding regarding the affect [sic] the plea would have." Appellant's Brief at 10. He contends that he did not fully comprehend that consecutive sentences were possible and notes that he asserted in his motion "that he understood that if he pleaded guilty, his sentence would be concurrent, not consecutive." Id. He states that he brought these considerations regarding his confusion to the court promptly following his change of plea hearing and that "[t]hus, it can be reasonably inferred that these statements reflect [his] true confusion, as opposed to any purely self-serving motive, as [he] would have no knowledge of whether the trial court would impose consecutive or concurrent sentences." Id. The State maintains the court did not abuse its discretion in denying Gross's motion to withdraw his guilty plea, that his claim that he was unaware he could receive consecutive sentences is inconsistent with the record, and that each of the claims in his motion are inconsistent with the statements he made to the trial court. The State further argues that allowing Gross to withdraw his guilty plea would substantially prejudice the State.

8

After Gross indicated that he wished to plead guilty, the trial court informed him of his rights, and Gross informed the court that he understood his rights and that he was entering his guilty pleas freely and voluntarily. Gross expressly stated several times, upon questioning by his counsel and by the court, that he understood that the court may order him to serve his sentences for two counts of murder consecutive to each other and that his aggregate sentence would range from 45 years to 130 years. Further, he does not argue on appeal that the advice of his trial counsel or his health conditions affected his ability to understand his pleas or the plea proceedings or the fact that the court had the discretion to impose consecutive sentences. We note that Gross told the court that he was satisfied with the advice of his counsel, that his conditions would not in any way affect his ability to understand the proceedings, and that he made the decision to plead guilty freely and voluntarily.

Based upon our review of the record, we conclude that Gross has not overcome the presumption of validity accorded the trial court's denial of his motion to withdraw his guilty pleas. Such a denial was within the discretion of the court, and we cannot say its refusal to allow Gross to withdraw his guilty pleas constitutes manifest injustice. See Coomer, 652 N.E.2d at 63 (holding that the refusal to allow defendant to withdraw his guilty plea did not constitute manifest injustice); Jeffries v. State, 966 N.E.2d 773, 778 (Ind. Ct. App. 2012) ("Instances of manifest injustice may include any of the following, none of which are present here: a defendant is denied the effective assistance of counsel, the plea was not entered or ratified by the defendant, the plea was not knowingly and voluntarily made, the prosecutor failed to abide by the terms of the plea agreement, or the

9

plea and judgment of conviction are void or voidable."), trans. denied. We do not disturb the trial court's denial of Gross's motion to withdraw guilty plea.

II.

The next issue is whether the trial court abused its discretion in sentencing. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Anglemyer v. State, 868 N.E.2d 482, 490-491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id. The decision to impose consecutive sentences lies within the discretion of the trial court. Gilliam v. State, 901 N.E.2d 72, 74 (Ind. Ct. App. 2009). A trial court is required to state its reasons for imposing consecutive sentences or enhanced terms. Id. A single

aggravating circumstance may be sufficient to support the imposition of consecutive sentences. Id.

Gross contends that the court abused its discretion in imposing mitigated sentences for his murder convictions and then ordering the sentences to be served consecutively. He argues that the court's sentencing decision "is internally and inherently inconsistent, as the trial court had to find the mitigating circumstances outweighed the aggravating circumstances . . . for the purpose of imposing the underlying sentences, but then determined that any of the aggravating circumstances found would adequately support the imposition of consecutive sentences." Appellant's Brief at 14. The State maintains that the court stated several times that the aggravating circumstances outweighed the mitigating circumstances and the court's decision to impose two fifty-year sentences served consecutively was not an abuse of discretion.

In order to impose consecutive sentences, the trial court must find at least one aggravating circumstance. Frentz v. State, 875 N.E.2d 453, 470 (Ind. Ct. App. 2007), trans. denied. We have held that there is "no basis for holding that a trial court is restricted to a one-step balancing process when sentencing a defendant for multiple crimes" and that "it is permissible for a trial court to consider aggravators and mitigators in determining the sentence for each underlying offense and then to independently consider aggravators and mitigators in determining whether to impose concurrent or consecutive sentences." Frentz, 875 N.E.2d at 472. In addition, the Indiana Supreme Court has stated "appellate review should focus on the forest—the aggregate sentence— rather than the trees—consecutive or concurrent, number of counts, or length of the

11

sentence on any individual count" and that "[w]hether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences if for no other reason than to preserve potential deterrence of subsequent offenses." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).

Here, after identifying all of the aggravating and mitigating circumstances, the court imposed a sentence of fifty years, which was less than the advisory sentence for murder, for each of Gross's murder convictions and cited Gross's mental health condition and history. The court then went on to find that any of the aggravators it had identified when compared against the mitigators warranted consecutive sentences and ordered the sentences to be served consecutively. One of the aggravating factors found by the court was that there were multiple murder victims in this case. See id. (the factor of multiple victims is highly relevant to the decision to impose consecutive sentences).

The court did not state that the aggravating and mitigating factors were in equipoise or that the mitigators outweighed the aggravators. The trial court provided its reason, namely, Gross's health condition and history, for its decision to impose sentences for the underlying murder convictions which were lower than the advisory sentences. The court then provided additional support for its decision to impose consecutive sentences, and this additional support consisted of each of the aggravating factors it had identified, including that there had been two murder victims. As such, the trial court considered additional circumstances when it imposed consecutive sentences. Further, the court's order is not somehow internally or inherently inconsistent as the court provided an adequate explanation of its reasons for its sentencing determination and there were

12

multiple murder victims. See Frentz, 875 N.E.2d at 472 (observing there is no basis for holding that a trial court is restricted to a one-step balancing process when sentencing a defendant for multiple crimes). The court's decision to impose consecutive sentences is not invalidated because Gross's underlying sentences were mitigated. The trial court did not abuse its discretion in ordering consecutive sentences.

III.

The next issue is whether Gross's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Gross contends that his aggregate sentence of 100 years is inappropriate in light of the nature of the offense and the character of the offender. With respect to the nature of the offense, Gross argues that there is nothing regarding the circumstances of the murder and the underlying robbery offense which is exceptional, that the core of his actions are consistent with aiding and assisting a robbery offense, that he had no idea that Moore would kill someone, and that Gross did not engage in any violent actions. He argues that his actions are best described as following the lead of Moore, who could accurately be described as the principal. With respect to the character of the offender, he notes that his criminal history consists of four misdemeanor convictions, one for battery, two for

13

disorderly conduct, and one for theft, and contends that the fact he accepted responsibility, his genuine expression of remorse, and his essentially open plea of guilty all reflect favorably on his character. He states that he pled guilty approximately three months after the offenses and that, considering this short time period and the open plea, it is reasonable to infer that the decision to plead guilty was not simply a decision of practicality but a true acceptance of his guilt and responsibility. Gross also asserts that he cared for his children, that he has been diagnosed with bipolar and paranoid schizophrenia, and that he was unable to take medications for his conditions as his family lacked funds.

The State maintains that Gross's sentence is not inappropriate, and the fact that Gross was aware Moore had a loaded gun that he intended to use during the robbery demonstrates the severity of the offense because it reveals his awareness that violence and serious harm could result. The State notes that Gross gave Moore his shoes to help prevent Moore from being identified when Moore shot the two proprietors of the store, twenty-year-old Singh and fifty-five year old Bhatti. The State argues that, after the offense, Gross and Moore met in an alleyway and hid the gun, that Singh's wounds indicated he had been shot in the back of the head at point blank range, and that, as an accidental death arising from certain offenses could sustain felony murder, the fact that Bhatti and Singh were intentionally killed and Gross was aware that Moore possessed a gun he intended to use in the robbery supports Gross's sentence. The State further maintains that Gross's criminal history supports his sentence, that he had prior convictions for battery, theft, and disorderly conduct although he was only twenty-three

years old, that he had further charges for robbery and inciting a riot that were not prosecuted, and that Gross was on probation when he committed the instant offenses. The State also notes that Gross pled guilty on the day his trial was set to begin and then filed a motion to withdraw his guilty pleas, and that he admitted he began smoking marijuana and drinking alcohol at age eighteen and that he was high on synthetic marijuana and drunk at the time of the offense. The State finally argues that Gross stated he knew and was friends with the victims, demonstrating his callousness as he was willing to participate in the armed robbery of his friends that resulted in their deaths.

With respect to the nature of the offense, the record reveals that Gross and Moore went to Saleh's Market to commit a robbery, that Gross gave his black shoes to Moore because they appeared less distinctive or identifiable than Moore's red shoes, that Gross knew that Moore was armed with the gun when he entered the store, that Moore shot and killed Bhatti and Singh, and that, after Moore joined Gross, they hid the gun. The prosecutor noted that the autopsy showed that Singh had been shot in the back of the head. Gross testified that Singh had been like a brother to him, and that when he was arrested, he "was drunk and high off of fake weed." Appellant's Appendix at 97. Two persons, Bhatti and Singh, were shot and murdered, and Singh was shot in the back of the head.

With respect to the character of the offender, the record reveals that, on the day his jury trial was scheduled to begin, Gross pled guilty to two counts of murder and left sentencing to the discretion of the trial court and that, ten days later, he moved to withdraw his guilty pleas. The presentence investigation report (the "PSI") reveals that

15

Gross was born on September 25, 1990, that he has three children who live with their mother in Elkhart County, that he has not held a job since 2008 when he worked at a McDonald's restaurant, and that he was receiving monthly disability income prior to his incarceration. Gross reported that he was diagnosed with bipolar disorder and paranoid schizophrenia, that he was eighteen when he began drinking alcohol and using marijuana, and that he would drink every day. The PSI indicates that his criminal history includes misdemeanor convictions for battery in Elkhart, Indiana, in 2009; disorderly conduct in Memphis, Tennessee, in 2011; theft in Memphis in 2012; and disorderly conduct in Elkhart in August of 2013. The PSI also states that Gross was charged with, but not prosecuted for, inciting a riot as a misdemeanor in Memphis in 2011 and robbery as a felony in Memphis in 2012.

After due consideration of the trial court's decision, we cannot say that Gross has met his burden of showing that the aggregate sentence imposed by the trial court for his two murder convictions is inappropriate in light of the nature of the offense and the character of the offender.

## CONCLUSION

For the foregoing reasons, we affirm Gross's convictions and sentence.

Affirmed.

BAILEY, J., and ROBB, J., concur.

16