## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 02 2018, 6:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Appellate Division
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Melvin Ryan Bruce,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 2, 2018

Court of Appeals Case No.
18A-CR-1430

Appeal from the Lake Superior
Court

The Honorable Salvador Vasquez,
Judge

Trial Court Cause No.
45G01-1708-MR-6

**Bailey, Judge.**

# Case Summary

Melvin R. Bruce ("Bruce") appeals his conviction, following a plea agreement, for voluntary manslaughter, a Level 2 felony.[1] We affirm.

# Issues

Bruce raises two issues on appeal which we restate as follows:

> I.    Whether the trial court abused its discretion in sentencing.

> II.   Whether his sentence is inappropriate in light of the nature of the offense and his character.

# Facts and Procedural History

On August 29, 2017, Bruce was with his girlfriend, Temica Spencer ("Spencer"), at their residence in Lake County. Spencer's twelve-year-old daughter and Bruce's and Spencer's one-year-old daughter were also present in the home. Bruce and Spencer got into a heated argument and exchanged threats. Spencer briefly left the argument and returned with a knife. Bruce "was frightened for his life, although not to the reasonable level of fear required to establish self defense." Appellant's App. Vol. II at 83. Bruce retrieved his

---

[1] Ind. Code § 35-42-1-3.

handgun and shot Spencer one time in the chest. Spencer died as a result of the gunshot wound.

[4] The State charged Bruce with murder[2] and sought an enhancement based on Bruce's use of a firearm in the commission of the offense.[3] After the jury trial began, Bruce entered into a plea agreement under which he pled guilty to voluntary manslaughter. The agreement allowed the parties to argue for an appropriate sentence but capped sentencing to eighteen years of imprisonment. The plea agreement also provided that, at the time of sentencing, the State would dismiss the charge of murder and the firearm enhancement.

[5] The court conducted a sentencing hearing on May 17, 2018. Bruce presented only one witness, his brother, William Bruce ("William"), who testified regarding Bruce's good character and his remorse but also described Bruce's and Spencer's relationship as "volatile" "due to the alcohol." Tr. at 147, 151. William further testified that Bruce's two misdemeanor convictions were also "alcohol related." *Id*. at 147. And, although William stated that Bruce gave his oldest child, Melvin Jr. ("Jr."), whatever he required, William admitted that Bruce was $20,000 behind in child support payments for Jr. William testified that Bruce had "surrendered [to William his] parental rights" to his one-year-old daughter, and William now cares for that child. *Id*. at 157.

---

[2] I.C. § 35-42-1-1(1).

[3] I.C. § 35-50-2-11(d).

[6] Bruce asked the court to impose a fifteen-year sentence with eight years executed and placement in a community corrections work program. At the end of the sentencing hearing, the trial court noted the nature of the crime (killing in sudden heat), Bruce's lack of prior felony convictions, Bruce's support of family and friends, and Bruce's lack of criminal history of violence. *Id.* at 181. The court also found that the fact that the killing took place while the two young children were in the home was an aggravator. The court found that the mitigating factors of no significant criminal history and pleading guilty/accepting responsibility were balanced out by the "nature and circumstances" of the crime. *Id.* at 184.

[7] In its written sentencing order, the court found the mitigating factors to be: "(1) [Bruce] has no significant history of delinquency or criminal activity[, and] (2) [Bruce] has pled guilty and admitted responsibility." Appellant's App. Vol. II at 140. The court further found the following to be aggravators: "(1) The character of [Bruce] is violent and aggressive[, and] (2) [t]he crime of violence occurred within the family home" while the children were present. *Id.* at 141. The trial court sentenced Bruce to fifteen years executed in the Department of Correction ("DOC"), with 262 days of credit time. This appeal ensued.

# Discussion and Decision

## Abuse of Discretion in Sentencing

[8] Bruce maintains that the trial court erred in sentencing him. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895

N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any[ ]—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id*. (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). So long as a sentence is within the statutory range, the trial court may impose it without regard to the existence of aggravating or mitigating factors. *Anglemyer*, 868 N.E.2d at 489. However, if the trial court does find the existence of aggravating or mitigating factors, it must give a statement of its reasons for selecting the sentence it imposes. *Id*. at 490. But the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion, *Gross*, 22 N.E.3d at 869, and a trial court is under no obligation to explain why a proposed mitigator does not exist or why the court found it to be insignificant, *Sandleben v. State*, 22 N.E.3d 782, 796 (Ind. Ct. App. 2014), *trans. denied*.

[9] Bruce contends the trial court abused its discretion by failing to find his remorse, the needs of his dependents, and the unlikelihood of his recidivism as mitigating circumstances. Because Bruce's sentence is *less* than the advisory sentence, the trial court was under no obligation to consider mitigating or aggravating factors at all. *Anglemyer*, 868 N.E.2d at 489. Having chosen to do so, the trial court was "not obligated to accept as mitigating each of the circumstances proffered by the defendant." *Green v. State*, 65 N.E.3d 620, 636 (Ind. Ct. App. 2016), *trans. denied*. And the burden is on the defendant to establish that the trial court overlooked mitigating evidence that is both significant and clearly supported by the record. *Id*.

[10] Bruce has failed to carry that burden. The trial court did find that Bruce's acceptance of responsibility was a mitigating factor. But the only evidence Bruce cites in support of his alleged remorse[4] is his testimony at sentencing that he "hate[s] [him]self for it." Appellant's Br. at 8. William also testified that Bruce was remorseful. However, the trial court was not required to give credit or weight to that testimony, nor was it required to explain why it did not find remorse to be a mitigating factor in this case. *Sandleben*, 22 N.E.3d at 796. Moreover, a trial court's determination regarding whether a defendant is sincerely remorseful is "similar to a determination of credibility," and

---

[4] Bruce points to his lawyer's statements that Bruce was "screaming, crying for help" and "holding [Spencer], cradling her, trying to encourage her to hang on." Appellant's Br. at 8. However, his lawyer's statements are not evidence. And, although Bruce's lawyer refers to "the testimony" on this point, Tr. at 167, Bruce does not provide us with a citation to such testimony and our review of the transcript has not disclosed any such testimony.

"[w]ithout evidence of some impermissible consideration by the court, we accept its determination of credibility." *Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002).

Bruce also failed to carry his burden of establishing that an undue hardship to his dependents was a mitigating factor. Although William testified that Bruce had provided financial support for his mother in the past, the record also shows that Bruce's one-year-old child is in the custody and care of William, and Bruce is in arrearage on child support in the amount of $20,000 for his oldest child, Jr. Moreover, a trial court does not abuse its discretion by failing to find hardship to dependents as a mitigating factor "absent special circumstances showing that the hardship to [the] dependents is 'undue.'" *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009) (citation omitted), *trans. denied*. Bruce failed to show any such "special circumstances." The trial court did not abuse its discretion when it failed to find the needs of Bruce's dependents as a mitigating factor, nor was it required to state its reason refusing to find that mitigating factor. *Sandleben*, 22 N.E.3d at 796.

And, Bruce has also failed to show that the court abused its discretion when it did not find that his character and attitude make it unlikely that he would commit another offense. Under Indiana law, likelihood of recidivism is one circumstance which a trial court may[5] consider as a mitigating factor. I.C. § 35-

---

[5] Thus, Bruce errs when he contends that this statute provides that a court "must" consider any factors as mitigating circumstances. I.C. § 35-38-1-7.1(b)(8).

38-1-7.1(b)(8). Here, the trial court did consider that factor and specifically rejected it as a mitigating circumstance. Tr. at 182-83. The trial court acted well within its discretion when it found that mitigating factor to be absent. *Gross*, 22 N.E.3d at 869.

[13] Finally, Bruce asserts that there was no evidence to support the trial court's conclusion that Bruce's "violent and aggressive" character was an aggravating factor. He points to his lack of criminal history of violence and his own statement in his presentence investigation report that "he is someone who always walks away from a fight." Appellant's App. at 94. However, the trial court emphasized the violence of the crime in this case where Bruce, in fact, did not "walk away from" the fight but rather "killed the mother of [his] child." Tr. at 180. The trial court noted that this violent crime was committed in the presence of Bruce's one-year-old child and another twelve-year-old child, the latter of whom will remember the tragic events. *Id*. at 184. There was also evidence that Bruce and Spencer had a volatile relationship and, unlike the defendant in *Long v. State*, 865 N.E.2d 1031, 1036-37 (Ind. Ct. App. 2007), *trans. denied*, cited by Bruce, Bruce did have a history of multiple interactions with law enforcement over the years, including two misdemeanor convictions. Appellant's App. Vol. II at 89-91. The weight and credibility the trial court chose to give this evidence is not subject to our review, *Gross*, 22 N.E.3d at 869, and the court was within its discretion when it concluded that Bruce's violent and aggressive character was an aggravating circumstance.

[14] We note that the trial court did make some contradictory statements in sentencing, in that it noted that Bruce had "no violence in [his] record," and "no history of this kind of violence." Tr. at 182. However, even if the trial court did abuse its discretion in finding that Bruce had a violent and aggressive character which served as an aggravating factor, we would not remand this case for resentencing because, as we discuss below, Bruce's sentence was not inappropriate. *See, e.g.*, *Williams v. State*, 997 N.E.2d 1154, 1165 (Ind. Ct. App. 2013) (citations omitted) (holding that, even "if the trial court has abused its discretion in sentencing a defendant, we need not remand for resentencing if we conclude that the sentence imposed is not inappropriate"), *trans. denied*.

# Appellate Rule 7(B)

[15] Bruce contends that his sentence is inappropriate in light of the nature of the offense and his character. Article 7, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006).

However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original).

[16] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1224. The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[17] Bruce contends that the nature of the offense does not support the fifteen-year sentence.[6] Our analysis of the nature of the offense begins with the advisory

---

[6] Bruce had requested placement in Community Corrections but, in placing him in the DOC, the trial court stated that "any [suspended] or lesser sentence would depreciate the significance of this crime." Tr. at 185.

sentence, which was selected by the legislature as an appropriate sentence for the crime committed. *Reis v. State*, 88 N.E.3d 1099, 1104 (Ind. Ct. App. 2017). Here, Bruce's sentence is two years *less* than the advisory sentence and it is the same number of years he requested at sentencing; this weighs in favor of the appropriateness of the sentence. Moreover, when considering the nature of the offense, we look at the defendant's actions in comparison to the elements of the offense. *Cannon v. State*, 99 N.E.2d 274, 280 (Ind. Ct. App. 2018). Here, as the trial court noted, Bruce not only killed the mother of his child but did so in the presence of that young child and a second child. We cannot say Bruce's sentence was inappropriate in light of the nature of the offense.

[18] Bruce also maintains that the sentence is inappropriate in light of his character. In support of that claim, he points to his lack of felony convictions and the support of his friends and family. However, Bruce does have a criminal history. His presentence investigation report shows that he has been arrested multiple times over the years and he was convicted of carrying a handgun without a license, as a Class A misdemeanor, and public intoxication, as a Class B misdemeanor. Appellant's App. Vol. II at 89-91. The report also shows that Bruce owes $20,000 in child support and $9,000 in taxes. *Id*. at 93. Bruce also admitted to drinking about a six-pack of beer every day since he was eighteen or

To the extent Bruce challenges his placement rather than the length of his sentence, he has not pointed to any evidence that would convince us that his placement in the DOC is *in*appropriate. *See e.g., Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007) (noting that a defendant challenging the placement of a sentence under Rule 7(B) must convince us that the given placement is itself inappropriate, rather than show us that another placement might be more appropriate).

nineteen years old while he was in the military, but he has never completed a treatment program. *Id*. at 93-94. And Bruce's brother testified that he believed Bruce's alcohol consumption was related to Bruce's past crimes and the cause of the volatile relationship between Bruce and Spencer. These facts weigh in favor of the appropriateness of the sentence.

[19] Given Bruce's "volatile" relationship with the victim, the violent and severe nature of the offense, the fact that it occurred in the presence of young children, and the existence of Bruce's criminal history of misdemeanor convictions and problems with alcohol, we cannot say that his sentence—which is two years *less* than the advisory sentence and is the same length Bruce requested at sentencing—is inappropriate. Bruce has not pointed to evidence compelling enough to overcome the deference we owe to the trial court. *Stephenson*, 29 N.E.3d at 122.

[20] Affirmed.

Mathias, J., and Bradford, J., concur.