## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 01 2019, 7:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary T. Hunter, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 1, 2019 <br><br> Court of Appeals Case No. 18A-CR-2142 <br><br> Appeal from the Fayette Circuit Court <br><br> The Honorable Hubert Branstetter, Jr., Judge <br><br> Trial Court Cause No. 21C01-1703-F2-245 |

**Najam, Judge.**

## Statement of the Case

Gary T. Hunter, Jr. appeals his sentence following his guilty plea to possession of methamphetamine, as a Level 3 felony. Hunter raises two issues for our review, which we restate as follows:

>    1.    Whether the trial court abused its discretion when it sentenced him.
>
>    2.    Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## Facts and Procedural History

On March 20, 2017, parole officers with the Connersville Police Department ("CPD") conducted a routine visit of Hunter's home. When the parole officers arrived, there were two individuals in Hunter's living room. Hunter was in his bedroom, but the parole officers asked him to join the other two individuals in the living room. The officers were able to observe a small baggie on the floor by the couch and a loaded syringe on the coffee table, both of which tested positive for methamphetamine. The officers then placed all three individuals in handcuffs.

At that point, the officers called CPD Detective Craig Hamilton and informed him of their observations. Based on his conversation with the parole officers, Detective Hamilton decided to go to Hunter's house. When Detective Hamilton arrived, he and the other officers conducted a search of the residence.

During that search, Detective Hamilton observed a set of digital scales in Hunter's bedroom.

[5] Hunter, who was only wearing underwear, asked officers if they could retrieve a pair of pants for him. Detective Hamilton found a pair of jeans in Hunter's bedroom. Detective Hamilton asked Hunter if the jeans belonged to him, and Hunter confirmed that they did. Detective Hamilton then searched the pockets of the jeans and found a baggie that contained approximately thirty-five grams of methamphetamine and a hypodermic needle.

[6] The State charged Hunter with dealing in methamphetamine, as a Level 2 felony; maintaining a common nuisance, as a Level 6 felony; possession of a hypodermic needle, a Level 6 felony; possession of paraphernalia, as a Class C misdemeanor; and as a habitual offender. On May 11, 2018, Hunter entered into a plea agreement with the State. In that plea agreement, Hunter agreed to plead guilty to one count of possession of methamphetamine, as a Level 3 felony. He also agreed to admit to probation violations in two other cause numbers. In exchange, the State agreed to dismiss the remaining counts. Following a hearing, the trial court accepted Hunter's guilty plea and entered judgment of conviction accordingly.

[7] Thereafter, the trial court held a sentencing hearing. During the hearing, Hunter testified that he has had a problem with substance abuse for "all of [his] life." Tr. Vol. II at 32. He further testified that, prior to the current offense, he had worked as a confidential informant and that the methamphetamine that

officers found at his house had been left there by a "drug dealer that [he] busted." *Id.* at 35. Hunter testified that he found the methamphetamine underneath his dresser and that he should have turned it in to officers but that he decided to keep it for himself.

[8] At the conclusion of the sentencing hearing, Hunter requested the advisory sentence of nine years, with seven years in community corrections and two years on probation. In support of that request, Hunter asserted that the offense was unlikely to recur and that he has suffered from a substance-abuse problem for the majority of his life. The State requested an aggravated sentence based on its assertions that Hunter did not take responsibility for his actions and that Hunter has an extensive criminal history. Following those arguments, the trial court sentenced Hunter as follows: "The advisory sentence in this matter would be nine years. The Court will find that [sic] prior records aggravating and will find the aggravators outweigh the mitigators in this matter and will sentence Mr. Hunter to ten years to the Department of Corrections." *Id.* at 49. Thereafter, the trial court issued a written sentencing order in which it sentenced Hunter to ten years without explanation. This appeal ensued.

## Discussion and Decision

### *Issue One: Abuse of Discretion*

[9] Hunter first contends that the trial court abused its discretion when it sentenced him. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion

occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

[10] A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id*. (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind.), *clarified on reh'g other grounds*, 875 N.E.2d 218 (Ind. 2007)). On appeal, Hunter contends that the trial court abused its discretion when it sentenced him because it entered a "defective sentencing statement." Appellant's Br. at 9. Specifically, Hunter asserts that the trial court abused its discretion because the court's written sentencing order "offered no basis for its imposition of a ten-year sentence." *Id*.

[11] Hunter is correct that, in its written sentencing order, the trial court did not provide any explanation or reasoning as to why it sentenced him to ten years. But, "[w]hen examining the sufficiency of the sentencing statement, we examine both the trial court's written and oral statements." *Gleason v. State*, 965 N.E.2d 702, 710 (Ind. Ct. App. 2012). Here, during the sentencing hearing, the trial court identified Hunter's prior record as an aggravating factor, and it did

not identify any mitigating factors. And, based on those findings, the trial court sentenced Hunter to ten years. Accordingly, in examining both the oral and written statements, we conclude that the trial court's statement was sufficiently detailed to support the imposition of the sentence. *See id*.at 711.

[12]   Still, Hunter asserts that the trial court's oral sentencing statements were defective because the court "did not define 'prior records'" when it identified that as an aggravating factor, which phrase Hunter contends is ambiguous. *Id*. But contrary to Hunter's assertions, we do not find the trial court's use of the phrase "prior records" in its oral sentencing statement to be ambiguous. During the sentencing hearing, both Hunter and the State discussed Hunter's criminal history. Further, during its closing arguments, the State specifically asserted that Hunter was on probation and parole at the time of the instant offense and that he had ten prior felony convictions. Then, immediately after the State had concluded its closing arguments, the trial court pronounced Hunter's sentence. And the trial court sentenced Hunter to ten years based on its finding that the "prior records" were an aggravating factor. Accordingly, it is clear in context that the trial court's use of the phrase "prior records" referred to Hunter's prior criminal record.

[13]   Hunter also contends that the trial court's oral sentencing statement was confusing because it found that the aggravators outweighed the mitigators even

though it did not identify any mitigating circumstances.[1]  However, a "trial court need not state in the record those mitigating circumstances that it considered insignificant." *Sandleben v. State*, 22 N.E.3d 782, 796 (Ind. Ct. App. 2014).  Accordingly, we conclude that the trial court's statement that the aggravators outweighed the mitigators is either a reference to insignificant mitigators, which the court was not required to identify, or, in effect, an assertion that the mitigators, if any, are outweighed by the aggravators.  In either event, we are confident that the trial court acted within its discretion in findings that the aggravators outweighed any insignificant mitigators.

[14]  It is well settled that, when sentencing a defendant for a felony, the trial court must enter a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer*, 868 N.E.2d at 490.  Here, while arguably brief, the trial court's oral sentencing statement clearly identified the reasons for its decision to impose a slightly aggravated sentence.  We therefore cannot say that the trial court abused its discretion when it sentenced Hunter.

---

[1] Hunter does not make any direct argument on appeal that the trial court abused its discretion when it failed to identify any particular mitigating factors.  While Hunter states that he "was entitled to some benefit for pleading guilty" in his argument that his sentence is inappropriate, he does not argue that the trial court abused its discretion when it did not identify his guilty plea as a significant mitigating factor. Appellant's Br. at 14.

## *Issue Two: Inappropriateness of Sentence*

[15] Hunter next contends that his ten-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. [*Anglemyer*, 868 N.E.2d at 494].

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[16] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather

whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[17] The sentencing range for a Level 3 felony is three years to sixteen years, with an advisory sentence of nine years. *See* Ind. Code § 35-50-2-5(b) (2018). In imposing Hunter's sentence, the trial court did not identify any mitigating factors, but the court identified Hunter's criminal history as an aggravating factor. In light of those findings, the trial court sentenced Hunter to a slightly aggravated sentence of ten years in the Department of Correction.

[18] Hunter contends that his sentence is inappropriate in light of the nature of the offense because he only possessed the methamphetamine as a result of his work as a confidential informant and because "[t]he record contains no evidence indicating Hunter actually consumed any of the drugs." Appellant's Br. at 11. And with respect to his character, Hunter asserts that, even though he has a criminal history, many of his prior offenses were Class D felonies or were misdemeanors and that he had previously functioned well in community corrections. He further contends that his intentions were good when he volunteered to be a confidential informant and that he accepted responsibility for his actions when he pleaded guilty.

[19]     We cannot say that Hunter's ten-year sentence is inappropriate in light of the nature of the offense and his character. Regarding the nature of the offense, Hunter admitted to possessing thirty-five grams of methamphetamine, which is more than three times the amount that he needed to possess in order to be convicted of the Level 3 felony. *See* I.C. § 35-48-4-1(d) (the offense is a Level 3 felony if "the amount of the drug involved is at least five (5) grams but less than ten (10) grams"). Further, while he asserts that he only possessed the methamphetamine because of his work as a confidential informant, Hunter admitted that he did not intend to turn it in to police but, rather, that he had decided to keep it for himself. As for Hunter's character, the record demonstrates that he has an extensive criminal history. Prior to the instant offense, Hunter had been convicted of ten felonies and sixteen misdemeanors. Further, he had violated the terms of his probation on several occasions. Indeed, Hunter was on probation and parole in two other cause numbers when he committed the instant offense. Additionally, Hunter admitted to a long history of substance-abuse problems for which he has never sought treatment. As such, we cannot say that Hunter's slightly aggravated sentence is inappropriate in light of the nature of the offense and his character. We therefore affirm Hunter's sentence.

[20]     Affirmed.

Baker, J., and Robb, J., concur.