## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 10 2019, 9:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas F. Wallace
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Trevor M. Houlihan, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 10, 2019 <br><br> Court of Appeals Case No. 19A-CR-449 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John F. Surbeck, Jr., Judge <br><br> Trial Court Cause No. 02D06-1802-F4-12 |

**Najam, Judge.**

# Statement of the Case

Trevor Houlihan appeals his sentence following his convictions for arson, as a Level 4 felony, and intimidation, as a Level 6 felony. Houlihan presents two issues for our review:

> 1. Whether the trial court abused its discretion when it sentenced him.
>
> 2. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

# Facts and Procedural History

In February 2018, after he found out that his ex-girlfriend, C.O., had started dating someone else, Houlihan threatened to kill C.O. Houlihan also drove to C.O.'s house, dropped a lit match in the gas tank of her car, and drove away. The car caught fire. Tyler Treesh with the Huntertown Fire Department responded to the fire and, while he was trying to extinguish it, "a large portion of magnesium in that vehicle exploded in [his] face." Sent. Tr. at 18. That explosion damaged Treesh's protective gear "beyond repair." *Id.*

When Allen County Police Department officers arrived at C.O.'s house, both C.O. and her parents told them that they suspected that Houlihan had started the fire. When officers went to Houlihan's house, he admitted that he had set her car on fire. Houlihan told the officers that he had no remorse and that he considered it "mission accomplished." Appellant's App. Vol. 2 at 14.

The State charged Houlihan with arson, as a Level 4 felony, and intimidation, as a Level 6 felony. After the charges were filed, Houlihan sought treatment for alcohol abuse with Dr. Stephen Ross, who diagnosed Houlihan with severe alcohol abuse disorder, cannabis use disorder, and impulse control disorder. Dr. Ross recommended that Houlihan undergo inpatient treatment in Cleveland, and he completed that treatment. In October 2018, Houlihan pleaded guilty as charged. The trial court entered judgment of conviction accordingly and sentenced Houlihan to: ten years for arson, with six years executed and four years suspended to probation; and one year for intimidation, to be served concurrent with the sentence for arson. This appeal ensued.

## Discussion and Decision

### *Issue One: Abuse of Discretion in Sentencing*

Houlihan first contends that the trial court abused its discretion when it sentenced him. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating

factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind.), *clarified on reh'g other grounds*, 875 N.E.2d 218 (Ind. 2007)).

[8] The sentencing range for a Level 4 felony is two years to twelve years, with an advisory sentence of six years. Ind. Code § 35-50-2-5.5 (2019). The sentencing range for a Level 6 felony is six months to two and one-half years, with an advisory sentence of one year. I.C. § 35-50-2-7. Here, the trial court did not identify any aggravators or mitigators in its written sentencing statement. However, at the sentencing hearing, the trial court noted Houlihan's complete lack of remorse and the nature and circumstances of the offenses, and the court acknowledged Houlihan's guilty plea as indicative of his "acceptance of responsibility." Sent. Tr. at 32. The court sentenced Houlihan to ten years, with six years executed and four years suspended to probation for his arson conviction and a concurrent one year executed sentence for his intimidation conviction.

[9] Houlihan contends that the trial court "erred by enhancing the presumptive sentence without identifying any aggravating circumstances." Appellant's Br. at 16. He also asserts that the trial court abused its discretion when it failed to identify proffered mitigating circumstances. We address each contention in turn.

## Aggravating Circumstances

First, as the State correctly points out, our courts no longer impose "presumptive" sentences, and "'a sentence toward the high end of the [applicable sentencing] range is no longer an "enhanced sentence" in the sense that the former regime provided.'" Appellee's Br. at 10 (quoting *Pedraza v. State*, 887 N.E.2d 77, 80 (Ind. 2008)). Second, while the trial court did not identify any aggravating circumstances in its written sentencing statement, the court explained its reasons for imposing the sentence during the sentencing hearing as follows:

> I'm very troubled by—I read the Probable Cause Affidavit, followed by the remarks made by you at the time, and the event itself, . . . one of the thoughts I had was that I cannot imagine throwing a match into an open gas tank. I just—it's just beyond comprehension to me that you could be so out of control and so hateful that you could do that, . . . clearly endangering yourself as well as a number of other people. I'm not allowed to give a great deal of weight to victim impact, but very clearly you have had an extraordinary negative impact upon these people for absolutely no reason other than you and your ego for lack of a better explanation.

> * * *

> The other thing that I heard, that I was shocked at actually, to hear that you continued to drink after the event until the last thirty (30) days, which is not only after the event, but after therapy. Unless . . . I'm mistaken here with anything please correct me, but that's what I heard, I believe, which tells me that you got nothing out of the treatment agency that Dr. Ross tells us is the second best in the country. It sounds to me as I think mom said, I'm not sure you got it yet. I also know . . . that you're in

serious need of treatment, but I'm not sure that you're prepared to accept that treatment or accept the consequences of your own conduct thereby being an incentive to accept treatment. That conduct has its consequences.

* * *

I can't . . . get pas[t] the visual of throwing a lighted match into a car's gas tank and then seeing these exhibits, and saying to the fire fighter that you didn't really care what happened to anybody. And I think that's the acceptable true statement about your remorse. I don't think you have any remorse in spite of the remarks made since then that you've come to be remorseful. I think the only thing you're remorseful about is the fact that you got caught and now you're standing here subject to the possibility of a Department of Correction sentence.

* * *

You have not demonstrated any significant remorse. Significant remorse would be quit drinking because that's what you did when you were drinking. You should [have] quit the next morning, and certainly after treatment. So I'm gonna order you committed to the Indiana Department of Correction for ten (10) years on the Arson Charge; one (1) year on the Intimidation.

Sent. Tr. at 30-32.

[11]     We hold that the trial court's statement at the sentencing hearing was sufficiently detailed to support the imposition of the sentence. *See Gleason v. State*, 965 N.E.2d 702, 711 (Ind. Ct. App. 2012).

*Mitigating Circumstances*

[12]    Houlihan also contends that the trial court abused its discretion when it did not find mitigating: his lack of criminal history; the likelihood that he would respond affirmatively to probation or short-term incarceration; he is unlikely to commit another crime; he has made or will make restitution to his victim; that his incarceration will result in undue hardship to him; and his guilty plea. The finding of mitigating circumstances is within the discretion of the trial court. *Rascoe v. State*, 736 N.E.2d 246, 248-49 (Ind. 2000). An allegation that the trial court failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id.* at 249. The trial court is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance. *Id.*

[13]    Houlihan cites Indiana Code Section 35-38-1-7.1(b)(6) as support for his contention that he "has no criminal history whatsoever and the trial court obviously did not take that into consideration before sentencing" him. Appellant's Br. at 18. That statute provides that a trial court may consider mitigating a defendant's lack "of *delinquency or* criminal activity," and Houlihan ignores his adjudication as a delinquent for an alcohol-related offense just four years before the instant offenses. I.C. § 35-38-1-7.1(b)(6) (emphasis added). The trial court noted that juvenile adjudication in its sentencing statement. The trial court did not abuse its discretion when it did not find Houlihan's lack of criminal history to be mitigating.

[14] With regard to whether Houlihan is likely to respond affirmatively to probation or short-term incarceration and unlikely to commit another crime, he directs us to the evidence that he completed an inpatient treatment program, he had expressed remorse and apologized to C.O. and her family, and Dr. Ross testified at the sentencing hearing that "if [Humphrey] follows through on [Dr. Ross'] recommendations he could control his drinking issues and his negative impulses[.]" Sent. Tr. at 8. However, as the trial court pointed out, Humphrey continued to consume alcohol even after undergoing treatment, and the court did not find Humphrey to be remorseful. We cannot say that the trial court abused its discretion when it did not identify those proffered mitigators.

[15] Houlihan also asserts that, because he is gainfully employed, he "could make restitution" to C.O., but his incarceration would cause him to lose his job, "thereby creating an undue hardship on [Humphrey] and affecting his ability to pay the restitution in this case." Appellant's Br. at 20. This argument is unpersuasive. Houlihan does not explain how his loss of employment creates an *undue* hardship, as many convicted felons lose their employment. And Houlihan has not shown that his ability to pay restitution is a significant mitigating factor. Houlihan does not explain, for example, how much he could afford to pay C.O. and over what period of time.

[16] Finally, Houlihan contends that the trial court should have given mitigating weight to his guilty plea in light of his acceptance of responsibility and his alcoholism. However, Houlihan ignores that, at sentencing, the trial court acknowledged that his guilty plea showed "an acceptance of responsibility."

Sent. Tr. at 32. To the extent Houlihan asserts that his guilty plea deserves more mitigating weight, that claim is not subject to appellate review. *Anglemyer*, 868 N.E.2d at 491. We cannot say that the trial court abused its discretion when it declined to adopt these proffered mitigators. Houlihan has not demonstrated any abuse of discretion by the trial court in imposing sentence.

### Issue Two: Inappropriateness of Sentence

[17] Finally, Houlihan asserts that his ten-year aggregate sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This Court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. [*Anglemyer*, 868 N.E.2d at 494].

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[18] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[19] An appellant bears the burden of showing that both prongs of the inquiry favor revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Here, Houlihan contends only that his sentence is inappropriate in light of his character, but he makes no argument regarding the nature of the offenses. Accordingly, we agree with the State that Houlihan has waived this issue for our review. *See Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*.

[20] Waiver notwithstanding, Houlihan's argument on appeal is without merit. Regarding the nature of the offenses, Houlihan threatened to kill his ex-girlfriend when she started dating someone else, and the fire Houlihan started

was so severe that it caused an explosion that destroyed a fireman's protective gear beyond repair. We cannot say that Houlihan's sentence is inappropriate in light of the nature of the offenses.

[21] Houlihan contends that his sentence is inappropriate in light of his character because he: is a young man and has no criminal history; he expressed "a great deal of remorse in his allocution statement" and "asked for forgiveness"; he suffers from "severe alcoholism" and a lack of "impulse control"; and he has undertaken "extraordinary efforts to correct his behavior by seeking out treatment from professionals and following through with their recommendations." Appellant's Br. at 23. However, as the State points out, Houlihan admitted to underage alcohol consumption, for which he was adjudicated a delinquent in 2014, and he admitted to regular use of marijuana for a few years. Thus, while Houlihan does not have a criminal history, he admittedly has regularly violated the law. Further, the trial court did not believe Houlihan's expression of remorse or request for forgiveness. And the court noted that Houlihan continued to drink even after completing the inpatient treatment program. We cannot say that Houlihan's sentence of ten years with six years executed and four years suspended to probation is inappropriate in light of his character.

[22] Finally, we note that Houlihan suggests that the trial court was biased against him because of his race and imposed his sentence because of that alleged bias. In particular, Houlihan states that

> Judge Surbeck was aware that an influential article was being written for the Fort Wayne Journal Gazette that implied that Judge Surbeck sentences African-American defendants more harshly than white defendants. . . . [Humphrey] is a white male and his case presented an opportunity for Judge Surbeck to show that he sentences white defendants as harshly as African-American defendants. Without any other reasonable explanation for the aggravated sentence, one must assume that the sentence imposed in his case was a reaction by Judge Surbeck to counteract the impression that he sentences persons differently based on race.

Appellant's Br. at 24-25. We reject Houlihan's contention on this issue. Houlihan does nothing more than speculate that his sentence is based on his race and asks that we "assume" that the trial court was biased against him. Without any evidence of the trial court's bias, Houlihan's contention fails.

[23] Affirmed.

Bailey, J., and May, J., concur.