# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 22 2020, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney
General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodriquez Anderson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 22, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2098<br><br>Appeal from the Clark Circuit<br>Court<br><br>The Honorable Bradley B. Jacobs,<br>Judge<br><br>Trial Court Cause No.<br>10C02-1808-F2-33 |

**Altice, Judge.**

## Case Summary

A jury found Rodriquez Anderson guilty of Level 2 felony conspiracy to deal methamphetamine and Class B misdemeanor possession of marijuana. He appeals and raises the following restated issues:

> I. Did the trial court err when it denied Anderson's Ind. Criminal Rule 4(B) motion for discharge filed on the morning of trial?

> II. Did the trial court commit fundamental error in instructing the jury?

> III. Did the trial court commit reversible error when it excluded Anderson's proffered evidence regarding national drug values and slang terms for drugs?

> IV. Is Anderson's twenty-five-year aggregate sentence inappropriate?

> V. Did the trial court abuse its discretion when imposing the sentence?

We affirm in part and remand in part.

## Facts & Procedural History

On August 2, 2018, Anderson was the target of Jeffersonville Police Department's (JPD) narcotics investigation unit, and he had an outstanding warrant for his arrest out of another county. As part of the investigation, JPD Detective Thomas O'Neil sent a text message to Anderson stating, "I got 200 u

got me[,]" which Detective O'Neil later explained meant that he was asking if Anderson could sell him $200 worth of drugs. *Transcript Vol. 2* at 234; *Exhibits Vol.* at 6. After first inquiring who was asking, Anderson responded, "Aiet what you want?" *Exhibits Vol.* at 7. O'Neal replied, "200 cler"[1] and Anderson asked, "Ice?", to which O'Neal replied, "Ya clear my bad." *Id.* at 7-8. Detective O'Neil and two other officers testified that "clear" and "ice" were slang for methamphetamine. *Transcript Vol. 2* at 236, *Transcript Vol. 3* at 41, 47. According to O'Neil, $200 in the Southern Indiana area equated to a half ounce of methamphetamine and that a half an ounce equaled 14 grams. Another officer also testified that 14 grams in Southern Indiana typically sold for $200.

[4] Anderson and O'Neil arranged in their text exchange that Anderson would meet O'Neil at a local Red Carpet Inn hotel. Anderson told O'Neil, "Aiet give me a few got to go to grab it and I got a couple otha serves". *Exhibits Vol.* at 8. According to Detective O'Neil, "serves" meant other drug deals. *Transcript Vol. 2* at 238.

[5] Before Anderson arrived at the hotel, he called O'Neil, identifying himself as Ricco and saying that the plan would be that O'Neil would ride with Anderson to Anderson's drug source. Other officers who were assisting with this

---

[1] Detective O'Neil explained at trial that "cler" was a misspelling of "clear", and he spelled it wrong on purpose. *Transcript Vol. 2* at 236.

transaction knew that a 2002 white Buick passenger vehicle was registered to Anderson.

[6] Anderson arrived at the hotel in his white Buick and backed into a parking spot. He sent a text message to O'Neil confirming his arrival, and officers approached the Buick and placed Anderson under arrest. Anderson identified himself as Ricco to one of the arresting officers. A search of Anderson's vehicle found a set of digital scales on the vehicle's console, and, in the rear driver's-side floorboard, officers found a bag containing 49.62 grams of marijuana.

[7] While Anderson was being transported to the jail, he asked the transporting officer what he was going to be charged with, and when the officer responded that it would be conspiracy to deal methamphetamine, Anderson responded, "[M]eth how can you charge me with meth when I didn't have any meth." *Transcript Vol. 3* at 81. Anderson also stated to the officer that he had not intended to actually exchange drugs and just intended "to middle man a deal" to make some money on the side. *Id.*

[8] Anderson was arrested, incarcerated in the Clark County Jail, and charged with five counts, including Level 2 felony conspiracy to deal methamphetamine and Class B misdemeanor possession of marijuana. The court held an initial hearing on August 8, 2018 at which time the trial court appointed the Clark County Public Defender's Office to represent Anderson and set the matter for jury trial on February 19, 2019. On August 16, 2018, after the appointment of counsel but before the appearance of counsel, Anderson sent a document or

letter to the court requesting a speedy trial. Anderson did not object to the already-set February 19 trial date.

[9] On October 2, 2018, public defender Mark Kiesler filed his appearance for Anderson. On October 15, the trial court on its own motion set Anderson's pro se speedy trial request for hearing on October 19, 2018. On October 17, 2018, Anderson filed a pro se motion for pretrial release, and on October 19, Anderson appeared, in custody, at the scheduled hearing but Kiesler was not available and did not appear. The trial court stated to Anderson:

> You are represented by counsel. When you send [sic] me a letter I glanced through it . . . [a]nd then I forward [sic] that letter to your attorney and to the Prosecutor. What you are set for today was to have your attorney and to have an opportunity for you to tell him you wanted a speedy trial. He can still decline to file that request or to make that request if he thinks a speedy trial is not in your interest. I wanted everyone here today to be on the same page. The problem is Mr. Anderson when I saw this the other day, I set it and I am not sure Mr. Kiesler knows to be here.
>
> * * *
>
> [S]o I [sic] letting you know, that request is not an actual Speedy Trial request. Just so you know. We forwarded that to Mr. Kiesler. If he happens to get here before you go downstairs, . . . you guys can talk about it and we could put it on the record. But without and since you are represented by counsel the stuff that you sent to me are not formal motions, they are just correspondence.

*Transcript Vol. 2* at 4-5. The trial court and Anderson engaged in further dialogue about the matter, and the trial court told Anderson that, when it appointed a public defender on August 8, "at that point you are represented" although it may "take[] them 3-4 weeks to put it in an attorney's hand." *Id*. at 5. The court continued, "Your speedy trial request doesn't start until your attorney actually makes that formal request" and then encouraged Anderson to speak to Kiesler about it when they met to determine if that would be the best strategy for Anderson. *Id*. at 6. The CCS reflected, "Defendant advised request for speedy trial taken under advisement pending confirmation of request by counsel for Defendant." *Appellant's Appendix Vol. II* at 5.

[10] On December 8, 2018, Kiesler filed a Motion for Speedy Trial, and on December 28, the trial court granted the motion and set the matter for a jury trial on February 5, 2019. Anderson did not object to the February 5 trial setting.

[11] At the final pretrial conference on February 4, 2019, Anderson, by counsel,[2] orally moved for discharge pursuant to Anderson's pro se speedy trial request made on August 16, 2018. The State objected and noted that the motion for discharge was made orally and not in writing as required. The next day, before

---

[2] On January 2, the Public Defender's Office filed a substitution of appearance of counsel, with Bryan Abell appearing in place of Kiesler.

trial began, Anderson filed a written Motion for Discharge pursuant to Crim. R. 4(B), and his counsel argued,

> I would argue to the Court that Mr. Anderson had made his request known to the Court, it's been apparent since August 13[3] and in fact since he was brought up I think where the argument needs to be made is that the fact Your Honor you TUA'd it never denied it on October 15. And for those reasons I would argue starting August 13, 2018 to today's date is beyond 70 days in custody under CR 4.

*Transcript Vol. 2* at 206. The State responded with argument that, first, the motion for discharge was not made until the date of trial, which "could very well be acquiescence[,]" and, second, even if the pro-se request was considered as a motion, Anderson filed a subsequent motion for speedy trial on December 10 and the speedy trial timeline began to run at that time, making the February 5 trial timely. *Id.* at 207. After hearing argument, the trial court denied the motion for discharge stating:

> [W]hen we had the hearing October the 19th to determine whether or not this was a[n] invalid speedy trial request and whether Mr. Anderson wanted to do that, Mr. Kiesler was unavailable and wasn't here. So we did not get to the actual . . . December the 10th - when Mr. presumably when Mr. Kiesler had consulted with Mr. Anderson and determined yes they did in fact they wanted to file speedy, we set it at the point we set it for the

---

[3] Anderson's pro se request was signed and dated August 13 and file stamped August 16, 2018.

early trial and this was within the 70 days.  So I am going to deny the Motion to Discharge for today.

*Id*. at 208.

[12]  At the beginning of trial, the parties discussed the preliminary jury instructions. Anderson did not propose any instructions on the credibility of witnesses, jury unanimity, or on a lesser-included Level 5 felony conspiracy charge.  The court read preliminary instructions to the jury, and Anderson did not pose any objections.

[13]  After the State had presented its evidence at trial, Anderson sought to have admitted, without a sponsoring witness, a 2016 federal DEA document entitled National Drug Price and Purity Data regarding (1) nationwide pricing of controlled substances from January 2012 to December 2016, and (2) summary of narcotics slang.  Anderson asked the court to take judicial notice of the materials as a learned treatise on this subject.  The trial court excluded both offered exhibits on relevance grounds, finding that they did not apply to Clark County and were from 2016.

[14]  The final instructions stated, among other things, that the jurors were the exclusive judges of the law and facts and that the State must prove all elements of the charged crimes with evidence that "firmly convince[d] each" juror of Anderson's guilt.  *Appellant's Appendix Vol. III* at 142, 148.  The jury was also instructed about the existence of the lesser-included offense of conspiracy to deal methamphetamine as a Level 5 felony.  Final Instruction No. 19 stated:

The Defendant is charged with Conspiracy to Commit Dealing in Methamphetamine in an amount of at least ten grams in Count I, a Level 2 Felony. Conspiracy to Commit Dealing in Methamphetamine, a Level 5 felony, is included in Count I[.] If the State proves the Defendant guilty of Conspiracy to Commit Dealing in Methamphetamine in an amount of at least ten grams in Count I, a Level 2 Felony, you need not consider the included crime(s). However, if the State fails to prove the Defendant committed Conspiracy to Commit Dealing in Methamphetamine in an amount of at least ten grams in Count I, a Level 2 Felony, you may consider whether the Defendant committed Conspiracy to Commit Dealing in Methamphetamine, a Level 5 Felony, which the Court will define for you. You must not find the Defendant guilty of more than one crime for Count I.

*Id.* at 158. Anderson did not object to this instruction and did not propose any instructions defining the Level 5 felony or on unanimity or credibility of witnesses/weighing of evidence.

[15] In closing argument, the State told the jury:

As part of the reasonable doubt standard you can weigh testimony. You don't have to feel like testimony has to be looked at in a way w[h]ere it is treated equally. If you feel like the creditability [sic] of one piece of testimony is greater than [the] creditability [sic] of another piece of testimony you can weigh that differently in your reasonable doubt standard. . . .

* * *

When you look at this completed testimony you're going to have to judge the weight of this evidence in order to determine what your puzzle looks like. Do you believe what the officer's [sic] say? Do you think that what they are saying by their training and

experience regarding those phrases that they are creditable [sic]? And that is up to you. That's your function.

*Transcript Vol. 3* at 162-63, 166-67. Anderson's closing argument reminded the jury, "And that is your job today is to hear the evidence, weigh it and do the right thing." *Id*. at 173.

[16] The jury was given three blank verdict forms: one for the Level 2 conspiracy charge, one for the lesser-included conspiracy charge, and one for the possession of marijuana count. After the jury was out of the courtroom, Anderson's counsel brought to the court's attention that the final instructions "didn't actual[ly] define a level 5 felony dealing in methamphetamine. I expected [sic] . . . some chance they will come back with a question about it." *Id*. at 185. The trial court responded, "I can bring them out and we can read one agreed upon instruction or we can wait till they ask. I sa[y] wait till they ask and then you can shop something in that event." *Id*. Anderson did not object to this proposed course of action.

[17] The jury convicted Anderson as charged of Level 2 felony conspiracy to deal methamphetamine and Class B misdemeanor possession of marijuana. Anderson asked the court to poll the jury, and each juror confirmed that the verdict that was read was his or her individual verdict.

[18] After reviewing Anderson's criminal history, which included Kentucky convictions for complicity in second degree manslaughter, complicity in first degree robbery, and parole violations, and after considering aggravators and

mitigators, the trial court imposed a twenty-five-year, fully-executed sentence for Anderson's Level 2 felony conspiracy-to-deal-methamphetamine conviction and a concurrent one-year sentence for Class B misdemeanor possession of marijuana. Anderson now appeals. Additional facts will be provided below as necessary.

# Discussion & Decision

## I. Speedy Trial

[19]     Anderson asserts that he was entitled to a discharge because his trial was not held within seventy days of his August 16, 2018 pro se request for a speedy trial. "The Sixth Amendment to the United States Constitution and Article 1, section 12 of the Indiana Constitution guarantee the right to a speedy trial." *Wilkins v. State*, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009), *trans. denied*. Crim. R. 4(B), commonly known as the "speedy trial rule," generally implements the constitutional right of an incarcerated defendant to a speedy trial. *Black v. State*, 7 N.E.3d 333, 336 (Ind. Ct. App. 2014). Rule 4 states in relevant part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. . . .

Crim. R. 4(B)(1).[4] "Rule 4 places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution." *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013). Under Rule 4(B), we review questions of law de novo and a trial court's factual findings for clear error. *Id*. at 1039-40; *Roper v. State*, 79 N.E.3d 907, 910 (Ind. Ct. App. 2017). Here, there are no factual disputes present. Accordingly, we review de novo.

[20] Anderson's argument is that the requirements of Rule 4(B) were triggered on August 16, 2018 when he filed a written request with the trial court. At that point, the trial court had already appointed counsel to represent Anderson. Our Supreme Court has stated that once counsel is appointed, a defendant speaks to the court through counsel and a trial court is not required to respond to a defendant's request or objection. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). This court has held likewise. *Black*, 7 N.E.3d at 338 (holding that the trial court was not required to respond to defendant's pro se request for a speedy trial when it was made after counsel was appointed); *Jenkins v. State*, 809 N.E.2d 361, 367 (Ind. Ct. App. 2004) (quoting *Underwood* and finding that "[a]s counsel had been appointed before Jenkins filed either of his early trial motions, the court was not required to accept the motions for filing."), *trans. denied*.

---

[4] Our Supreme Court has observed that, although Rule 4 is commonly known as the "speedy trial rule," the rule technically guarantees an "early" trial. *Austin v. State*, 997 N.E.2d 1027, 1037 n.7 (Ind. 2013).

[21] In support of his argument that his pro se request for an early trial should have been honored, Anderson relies on *Fletcher v. State*, 959 N.E.2d 922 (Ind. Ct. App. 2012), *trans. vacated*. In *Fletcher*, after counsel was appointed but before an appearance was entered, Fletcher filed a pro se motion for an early trial. According to the CCS, the trial court noted that a public defender had been appointed, affirmed the previously scheduled trial date, and forwarded a copy of the motion to counsel. A few days later, the public defender entered an appearance. The State filed a motion to strike Fletcher's request for an early trial, and, at the hearing on the State's motion to strike, Fletcher's attorney objected "to resetting trial date past the May 11, 2010 jury trial date," which was seventy days after Fletcher's pro se motion for fast and speedy trial. *Id.* at 924. Several weeks later, Fletcher's attorney filed a motion for discharge pursuant to Rule 4(B) on the basis that more than seventy days had passed since Fletcher filed his pro se motion for an early trial. The trial court denied the motion, and Fletcher was eventually convicted of various drug-related charges.

[22] On appeal, Fletcher argued that the trial court improperly denied his motion for discharge. In addressing *Underwood* and *Jenkins*, the *Fletcher* majority stated:

> To the extent that the State relies upon the language in *Underwood* that "once counsel was appointed, Defendant spoke to the court through counsel," we acknowledge that this language may suggest that appointment is the relevant time period for determining whether a defendant may file a pro se motion for a speedy trial. However, *Underwood* was addressing a situation in which counsel filed motions to continue following the defendant's pro se motion for a speedy trial. Further, the issue of a distinction between the time a court appoints an attorney and

the time an attorney files an appearance was not at issue. Accordingly, we disagree with the holding in *Jenkins* to the extent that it implies that the appointment of counsel and not the appearance of counsel is the relevant time.

*Fletcher*, 959 N.E.2d at 929 (footnote omitted). The *Fletcher* majority also observed that Fletcher's attorney had objected to the resetting of trial and filed a motion for discharge, acts which the court considered to be an affirmation of Fletcher's earlier-filed pro se request for an early trial. The *Fletcher* court reversed the trial court's denial of Fletcher's motion for discharge.

[23] We find that *Fletcher* is distinguishable. Whereas Fletcher's attorney objected to the State's motion to strike Fletcher's pro se request and any attempt to postpone trial, Anderson's counsel did not reaffirm or otherwise seek to validate Anderson's pro se request. Rather, Anderson's counsel filed an appearance in October 2018 and thereafter filed a motion for speedy trial in December 2018. Anderson's trial was then reset from February 19 to February 5, 2019, and Anderson did not object to that setting. Fletcher's counsel also filed a motion for discharge after the seventy days had elapsed, and Anderson's counsel did not file a motion for discharge until the day of trial. Based on the particular circumstances of this case, we find that the trial court was not obligated to act upon Anderson's pro se request and his filing of it did not begin the seventy-day speedy trial period.

[24] Furthermore, even if Anderson's pro se request for a speedy trial caused Rule 4(B)'s period to begin running, he has failed to show reversible error. "A

defendant must maintain a position reasonably consistent with his request for a speedy trial and must object, at his earliest opportunity, to a trial setting that is beyond the seventy-day time period." *Wilkins*, 901 N.E.2d at 537 (quotation omitted). If a timely objection is not made, the defendant has abandoned his request for an early trial. *Wilkins*, 901 N.E.2d at 537. "The defendant's obligation to object to a trial date that falls outside the Criminal Rule 4(B) time frame reflects the purpose of the rule—to ensure early trials, not to allow defendants to manipulate the means designed for their protection and permit them to escape trials." *Id*. (quotation omitted).

[25] Here, Anderson argues that he diligently and consistently pursued a speedy trial. We disagree. His pro se request was filed on August 16, and the seventy-day period from the date of Anderson's pro se request elapsed on October 25. When Anderson filed his request, trial already had been scheduled for February 19. Anderson at no point objected to that trial setting, although he was present in person in court for a hearing on October 19. Kiesler filed an appearance on October 3, and, unlike in *Fletcher*, he did not reassert or confirm Anderson's previously-filed pro se motion or object to the February 19 trial setting. Kiesler filed a motion for speedy trial on Anderson's behalf on December 10, and on December 28, the court reset trial for February 5. Anderson did not object to that setting. Pretrial hearings were held on October 11 and November 8, 2018 and a status conference on January 2, 2019, and the record does not reflect any discussion or objection at any of those hearings to the initial February 19 trial setting or the reset February 5 trial setting. On February 4, the day before trial,

Anderson's then-counsel orally requested discharge, and filed a written motion for discharge on the morning of trial. This record does not reflect a defendant who objected at his earliest opportunity.

[26] Because Anderson did not maintain a position consistent with his request for a trial earlier than February 5, 2019, he may not now, on appeal, successfully assert that the trial court erred by failing to bring him to trial within the seventy-day period prescribed in Crim. R. 4(B)(1). *See Roper*, 79 N.E.3d at 911 (defendant waived pro se request at initial hearing for speedy trial where he did not object or bring violation of request to trial court's attention until after he was convicted); *Wilkins*, 901 N.E.2d at 537 (holding that the defendant "acquiesced to the trial setting outside of the seventy-day requirements and thereby abandoned his request for an early trial" where he failed to object to a trial set beyond the seventy-day time period).

## II. Instructions

[27] Anderson claims that the trial court failed to properly instruct the jury and committed reversible error. "It is well settled that '[t]he manner of instructing a jury is left to the sound discretion of the trial court.'" *Coy v. State*, 999 N.E.2d 937, 942-43 (Ind. Ct. App. 2013) (quoting *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*).

[28] Anderson argues that the trial court failed to properly instruct the jury on (1) the credibility of witnesses and weighing of witness testimony, as required by Ind. Jury Rules 20 and 26, (2) the requirement of a unanimous verdict, and (3) the

lesser-included Level 5 felony conspiracy to commit dealing in methamphetamine. Anderson did not tender any instructions or request any pattern jury instructions on the claimed missing instructions.[5] Nor did he object to the court's preliminary or final instructions.[6] He has thus waived the claim that the trial court erred for failing to give such instructions. *See Williams v. State*, 771 N.E.2d 70, 72 (Ind. 2002) ("A defendant who fails to object to the court's final instructions and fails to tender a set of instructions at trial waives a claim of error on appeal."); *Corbett v. State*, 764 N.E.2d 622, 629-30 (Ind. 2002) (where defendant did not tender instruction to trial court regarding specific intent for attempted murder, he was precluded on appeal from claiming trial court should have given an instruction on that matter); *Coy*, 999 N.E.2d at 943 (where defendant asked the trial court to give an instruction regarding lesser-included reckless driving but did not tender a proposed one, he waived issue of failure to give such instruction on appeal).

[29] Anderson concedes that he made no objections to the instructions given nor tendered any instructions to cover the missing matters but argues that the trial

---

[5] Ind. Crim. Rule 8(D) states that requested instructions must be reduced to writing, numbered, and accompanied by a cover sheet. Ind. Trial Rule 51(E) also permits a party to request jury instructions from the Indiana Pattern Jury Instructions "by merely designating the number thereof in the publication."

[6] T.R. 51 requires a party to state objections to instructions, providing in relevant part that, as to preliminary instructions, "Each party shall have reasonable opportunity to examine these preliminary instructions and state his specific objections thereto out of the presence of the jury and before any party has stated his case[,] and, as to final instructions, "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

court's mistakes amounted to fundamental error, requiring reversal. The doctrine of fundamental error is an extremely narrow exception to the waiver rule that requires the defendant to show that the alleged error was so prejudicial to his rights as to make a fair trial impossible. *Cruz Rivera v. State*, 127 N.E.3d 1256, 1258 (Ind. Ct. App. 2019) (citing *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014)), *trans. denied*. In considering a claim of fundamental error with respect to jury instructions, we look to the instructions as a whole to determine if they were adequate. *Davis v. State*, 835 N.E.2d 1102, 1108 (Ind. Ct. App. 2005), *trans. denied*. In determining whether fundamental error occurred, we consider "all relevant information given to the jury," including closing arguments and other instructions. *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002). When all information, as a whole, does not mislead the jury as to the correct understanding of the law, there is no due process violation. *Id.*

### a. Credibility of Witnesses and Weighing of Testimony

[30]    Anderson contends that the failure to give preliminary and final instructions on the credibility of witnesses and the manner of weighing testimony was fundamental error, arguing that "[w]ithout these instructions, the jury was left to its own devices to determine witness credibility and/or weighing evidence, such as simply believing police officers or weighing their testimony more favorably." *Appellant's Brief* at 21. Anderson is correct that J.R. 20(a) directs that the trial court "shall instruct" the jury before opening statement on, at least, "(1) the applicable burdens of proof; (2) the credibility of witnesses; and, (3) the manner of weighing the testimony received." J.R. 26(a) likewise directs that

the court "shall read" final instruction that "shall include" those same three matters.

[31] Anderson refers us to *Cruz Rivera*, where the trial court in preliminary instructions instructed the jury on the credibility of witnesses and manner of weighing testimony but failed to give final jury instructions on either of those matters. The defendant challenged this omission on appeal, and because he did not object at trial, he needed to establish fundamental error. The *Cruz Rivera* court recognized that J.R. 26(a) requires trial courts to instruct the jury on, among other things, the credibility of witnesses and the manner of weighing the testimony but determined that, under the facts of that case – where the jurors were instructed in preliminary and final instructions "to consider all the instructions together" and the jurors had heard the preliminary instructions on credibility and weighing testimony earlier that same day – the trial court did not commit fundamental error. 127 N.E.3d at 1259. We likewise find no fundamental error in the case before us. While the jury was not given preliminary instructions on the credibility of witnesses and weighing of testimony as they were in *Cruz Rivera*, we nonetheless find that based on all the relevant information given to the jury and considering the instructions as a whole, the court's instructional omission was not so prejudicial as to make a fair trial impossible.

[32] Here, the preliminary instructions and final instructions read to the jury instructed the jurors that they were "the judges of both the law and the facts." *Appellant's Appendix Vol. II* at 160, *Vol. III* at 142. The jurors were instructed, in

preliminary and final instructions, that "Reasonable doubt exi[s]ts when you are not firmly convinced of the Defendant's guilt, *after you have weigh[]ed and considered all the evidence.*" *Appellant's Appendix Vol. II* at 166, *Vol. III* at 148 (emphasis added). During closing argument, the State and Anderson each emphasized that the jury's job was to determine the credibility of testimony and the strength of the evidence. The State reminded the jurors that "you can weigh testimony" and "[y]ou don't have to feel like testimony has to be looked at in a way w[h]ere it is treated equally" such that if one piece of testimony has greater credibility than another "you can weigh that differently[.]" *Transcript Vol. 3* at 162-63. And counsel for Anderson discussed with the jury about whether they believed the officers' testimony "[a]nd . . . your job today is to hear the evidence, weigh it and do the right thing." *Id*. at 173.

[33] Based on the record before us, we find that the trial court did not fundamentally err when it did not instruct regarding the credibility of witnesses and manner of weighing testimony.[7]

### b. Unanimous Verdict

[34] Anderson contends that the court committed fundamental error when it did not instruct the jury that the verdict must be unanimous, arguing that "[w]ithout an instruction requiring unanimity, the jury could have been left with a belief that

---

[7] We note that Jury Rules 20 and 26 <u>mandate</u> the inclusion of jury instructions regarding credibility of witnesses and the manner of weighing evidence. Although we find no reversible error with regard to those missing instructions in this particular case, we remind trial courts of the requirement to include those and other preliminary and final instructions as identified in Jury Rules 20 and 26.

a simple majority was required." *Appellant's Brief* at 23. Considering the instructions as a whole, we disagree.

[35] The preliminary and final instructions told the jurors that "[t]he State must prove each element of the crime(s) by evidence *that firmly convinces each of you and leaves no reasonable doubt.*" *Appellant's Appendix Vol. II* at 166, *Vol. III* at 148 (emphasis added). Anderson acknowledges that, after the verdict was read, the jury was polled, each juror agreed that it was his or her verdict, and that polling the jury is sufficient to establish that the verdict was in fact unanimous. He argues, however, that "[p]olling the jury cannot cure the failure to instruct them on unanimity" as it occurred "after the trial court's neglect" and maintains that "[i]f they were not instructed and came back with less than unanimous verdict, a mistrial would have resulted." *Appellant's Brief* at 23-24 n.3. However, that situation did not occur here; the verdict was, in fact, unanimous and Anderson was not harmed. We cannot say that fundamental error occurred in this case.

### c. Lesser Included

[36] The lesser-included offense in Anderson's trial was conspiracy to commit dealing in methamphetamine as a Level 5 Felony. Anderson argues that fundamental error occurred because the jury did not receive a preliminary or final instruction defining the crime as a Level 5 felony and identifying the elements to be proven, suggesting that "[w]ithout sufficient information about the lesser included offense, the jury could have been misled to believe that its only option was the higher offense. In other words, reading the instructions,

the jury was left with no choice." *Appellant's Brief* at 29. Based on the record before us, we disagree that the jury was led to believe that the higher offense was its only option, and we conclude that fundamental error did not occur.

[37] Final Instruction No. 19 identified that Level 5 was a lesser included of the charged Level 2 felony and explained that the amount of methamphetamine was the relevant factor in distinguishing the two. It stated that "Conspiracy to Commit Dealing in Methamphetamine, a Level 5 felony, is included in Count I" and that "[i]f the State proves the Defendant guilty of Conspiracy to Commit Dealing in Methamphetamine in an amount of at least ten grams in Count I, a Level 2 Felony, you need not consider the included crime(s)." *Appellant's Appendix Vol. III* at 158. The instruction explained that "if the State fails to prove the Defendant committed Conspiracy to Commit Dealing in Methamphetamine in an amount of at least ten grams in Count I, a Level 2 Felony, you may consider whether the Defendant committed Conspiracy to Commit Dealing in Methamphetamine, a Level 5 Felony, which the Court will define for you" *Id.*

[38] It was after the jury had retired to deliberate that Anderson told the court, "I am just going through this and the final instructions and you didn't actual[ly] define a [L]evel 5 felony dealing in methamphetamine." *Transcript Vol. 3* at 185. In response, the trial court observed, "I guess there was no instruction [] tendered on the definition?" *Id.* Anderson did not tender an instruction either before deliberation or after he mentioned the missing instruction to the court, and,

further, posed no objection or disagreement with the trial court's proposal to wait and see if the jury asks about the lesser-included.

[39] During the discussion between counsel for both parties and the court, it was also observed that the lesser included offense was "somewhat defined" on the verdict form. *Id.* The verdict form for the lesser-included offense read, in part:

> If you find that the State of Indiana has proven each element of Conspiracy to Commit Dealing in Methamphetamine beyond a reasonable doubt, but you do not find that the Conspiracy involved an amount of at least 10 grams of Methamphetamine, then you may find the Defendant Guilty of the crime of Conspiracy to Commit Dealing in Methamphetamine, a Level 5 felony.

*Appellant's Appendix Vol. III* at 160.

[40] Considering the instructions as a whole and other information before the jury, we do not find that any error was so prejudicial as to make a fair trial impossible. Accordingly, the trial court did not commit fundamental error when it did not provide a separate instruction on the definition of the lesser-included Level 5 felony. *Barthalow v. State*, 119 N.E.3d 204, 211 (Ind. Ct. App. 2019) (no fundamental error where trial court did not provide instruction with definition of "bodily injury" where State, in closing argument, explained the key difference between Level 2 and Level 3 burglary); *Lane v. State*, 953 N.E.2d 625, 630-31 (Ind. Ct. App. 2011) (in finding that trial counsel was not ineffective for failing to tender instruction on lesser-included offense of

conversion, court noted that trial court did not commit fundamental error by failing to sua sponte give instruction on lesser-included offense).

## III. Exclusion of Evidence

[41]    Anderson claims that the trial court erred when it excluded a DEA Intelligence Report of 2016 National Drug Price and Purity Data and DEA Intelligence Report of Slang Terms and Code Words: A Reference for Law Enforcement Personnel, Exhibits B and C respectively. Anderson offered them without a witness and for the purpose of providing information regarding drug costs and slang terms. The State objected to each on relevancy grounds. The trial court agreed and disallowed Exhibits B and C.

[42]    We review the trial court's ruling on the exclusion of evidence for an abuse of discretion. *Pitts v. State, 904 N.E.2d 313, 318 (Ind. Ct. App. 2009), trans. denied*. We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id*. Generally, errors in the exclusion of evidence are disregarded as harmless unless they affect the substantial rights of a party. *Id*.

[43]    Here, Detective O'Neil testified as to current trends in Southern Indiana regarding pricing of and slang terms for narcotics. Two other officers also testified to the current local prices and slang terms. Anderson pursued a line of questioning with the officers as to whether the terms "ice" and "clear" sometimes refer to marijuana, such that it was possible that the texts between Anderson and Detective O'Neil concerned the sale of marijuana and not

methamphetamine. Each of the three testified that, in his experience, the terms "ice" and "clear" refer in Southern Indiana to methamphetamine, not marijuana, with one officer stating that, based on the terms used – "ice, clear, two hundred, half" – the "only one possible conclusion" was that Anderson was referring to methamphetamine. *Transcript Vol. 3* at 28, 42, 54, 62, 128, 131.

[44] On appeal, Anderson concedes that "there had been extensive testimony" about "prices, what they could be for, and what quantities the prices indicated," but asserts that "the proffered evidence was relevant to oppose the testimony of the police officers regarding prices, drugs and quantities[.]" *Appellant's Brief* at 31. He further argues that the fact that the reports were from 2016 and were national statistics, rather than for Clark County, "went to the weight of them, not their admissibility." *Id*. at 32.

[45] The Drug Price and Purity Data Report provided statistical information for "price per gram pure" of cocaine, methamphetamine, and heroin, as well as levels of purity – matters not at issue in the present case – and did not reflect "street price" or "retail price" of the drugs. *Exhibits Vol*. at 17. The Slang Report listed the terms "clear" and "ice" as slang for methamphetamine, which was consistent with the officers' testimony, and Anderson has not clearly explained in what way the proposed exhibits were contrary to the officers' testimony. To the extent that his argument is that, somewhere in the nation, the terms "ice" and "clear" have been used to refer to a strain of marijuana, the testimony at trial was that, in the local Southern Indiana area involved, "ice" and "clear" refer to methamphetamine. Further, we agree with the State that

Exhibits B and C were generally a compilation of pricing and slang that covered the whole nation making any "probative value [] severely diluted by its breadth" and, further, were from 2016, when Anderson's crime was committed in 2018. *Appellee's Brief* at 29. Anderson has not established that the trial court abused its discretion when it excluded Exhibits B and C.

# IV. Sentencing

[46] Anderson was found guilty of Level 2 felony conspiracy to commit dealing in methamphetamine and Class B misdemeanor possession of marijuana. He was sentenced to twenty-five years for the felony and to one year for the misdemeanor conviction, with the sentences to run concurrently.

[47] Initially, we address Anderson's possession conviction. Anderson asserts, and the State concedes, that his one-year sentence cannot stand because the sentence for a Class B misdemeanor is a maximum of one hundred eighty days. Ind. Code § 35-50-3-3. Accordingly, we remand to the trial court to correct its sentence for the possession conviction. We now turn to his claims that his sentence for his felony conspiracy conviction is an abuse of discretion and inappropriate.

## a. Abuse of Discretion

[48] Anderson asserts that the trial court abused its discretion in sentencing him. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances

before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014), *trans. denied*.

[49] A trial court abuses its discretion in sentencing if it does any of the following:

> (1) Fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id*. (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-91(Ind. 2007), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind. 2007)).

[50] Here, the court considered and rejected Anderson's proposed mitigating circumstance that incarceration would be an undue hardship on his family, and it accepted Anderson's requested mitigator of medical hardship due to having sickle cell disease. The trial court found Anderson's criminal history, the fact that he was on parole pending two different violations at the time of the crime, and the batteries he committed in jail as aggravating factors. The court then made the following statement, with which Anderson takes issue on appeal:

> [W]hile I totally respect someone's right to a speedy trial, frequently that is used as a little gamesmanship to try and rush the case on and get out faster. In this case it backfired on Mr. Anderson and we had the trial as quickly as we could and he was found guilty. So, he didn't accept responsibility he was found guilty by a jury.

*Transcript Vol. 3* at 203. The court thereafter determined that the aggravators outweighed the mitigators and sentenced Anderson to twenty-five years, fully executed.

[51] Anderson's argument is that the trial court abused its discretion because it indicated that, by going to trial, Anderson "didn't accept responsibility" and that exercising his right to a speedy trial was "gamesmanship." *Appellant's Brief* at 35-26. To the extent that the court's statements could be considered as effectively holding against Anderson the fact that he decided to take his case to trial, they were inappropriate. That said, the fuller context of the hearing indicates that the court's remarks regarding not accepting responsibility were in response to Anderson's earlier statement to the court that "I really didn't have drugs but I take responsibility for showing up" and that "I definitely have remorse" for "even showing up in the first place." *Transcript Vol. 3* at 199-200. And Anderson's counsel urged that Anderson had shown "remorse and regret." *Id*. at 201. With this backdrop, the court's comments reasonably could be viewed as a rejection of Anderson's post-trial acceptance-of-responsibility as a mitigator. *See Phelps v. State*, 969 N.E.2d 1009, 1020 (Ind. Ct. App. 2012) (trial court under no obligation to accept a defendant's alleged remorse as mitigating circumstances and trial court possesses ability to directly observe defendant and determine whether remorse is genuine), *trans. denied*. We do not find that the court abused its discretion in sentencing Anderson.

### b. Inappropriate

[52] Anderson contends that his twenty-five-year sentence for his Level 2 felony conspiracy to commit dealing in methamphetamine is inappropriate. We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The burden is on the defendant to persuade us his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[53] When determining whether a sentence is inappropriate as to the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Id*. at 1081. For his Level 2 felony, Anderson faced a sentencing range of ten to thirty years, with the advisory being seventeen and one-half years. Ind. Code § 35-50-2-4.5. Anderson asks us to reduce his twenty-five-year sentence to "no more than the advisory sentence." *Appellant's Brief* at 35.

[54] As this court has recognized, "[t]he nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Anderson urges that he was a "middleman" trying to arrange a meeting between what turned out to be an undercover officer and another person and "was not the actual dealer," such that his culpability was reduced. *Appellant's Brief* at 34. He also notes that this was not a crime of violence. We cannot agree that the nature of the offense warrants reduction in his sentence, however. He conspired to sell methamphetamine well in excess of the statutory requirement for a Level 2 felony. The State also presented evidence that Anderson had other deals or "serves" to do before meeting Detective O'Neil. *Exhibits Vol.* at 8. As the State observes, while Anderson may have been the facilitator, rather than the dealer, "he was still an integral part of a deal to sell a large quantity of a dangerous drug." *Appellee's Brief* at 32. Anderson has not persuaded us that the nature of the offense warrants revision of his sentence.

[55] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Anderson acknowledges he has a prior criminal record but argues that he obtained his GED, earned certificates in other skills/trades, and has a young child, making the sentence inappropriate.

[56] The record reflects that Anderson has prior felony convictions for violent and drug-related offenses. He was convicted in Kentucky in 2007 for complicity in manslaughter in the second degree and complicit to robbery in the first degree. In 2010, Anderson committed the Kentucky crimes of trafficking a controlled

substance within 1000 yards of a school, tampering with evidence, and receiving stolen property. At the time of the crimes in this case, he had a pending parole violation and had a warrant out for his arrest for a pending charge of battery resulting in moderate bodily injury.

[57] Further, the trial court found that Anderson had committed two batteries while in jail pending trial, observing:

> One seemed a simple fight, I was inclined to disregard that however the other also appears to be a straight up choke put on an inmate while coming from behind and in the presence of an officer.

*Transcript Vol. 3* at 203. Anderson has not persuaded us that his character renders his sentence inappropriate.

[58] Our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Anderson has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[59] Judgment affirmed in part and remanded in part.

Bailey, J. and Crone, J., concur.